THE PEOPLE, *ex rel.* Sarah Kearney, *vs.* JOSEPH CARTER.

A party in the peaceable and actual possession of lands, at the time of a forcible entry, is entitled to proceed under the statute relating to forcible entries and detainers, although he is neither seised of a freehold nor possessed of a term for years in the premises.

The office of justice of the peace is not a town but a county office, and therefore is not within the letter of the 15th section of the 11th title of the act of April 17, 1854, to consolidate the cities of Brooklyn and Williamsburgh and the town of Bushwick, which provides that the terms of office of the city and town officers *elected or appointed for the cities of* Brooklyn and Williamsburgh and the town of Bushwick shall expire on the first day of January, 1855.

Where H., a justice of the peace of the city of Brooklyn prior to the consolidation, continued in his office of justice until after the consolidation took effect, and then resigned, and the governor of the state issued a commission to J., dated January 9, 1856, appointing him a justice of the peace for the city of Brooklyn, in the place of H. resigned ; *Held* that the appointment was invalid.

*Held also,* that the governor having no power to fill the vacancy, he could not bestow upon J. the outward signs and symbols of the office, and J. could not therefore be said to be in by color of title, so as to make his acts legal, and his warrant a protection to persons executing it.

THIS is a proceeding under title 10, chapter 8, part 3, article 1 of the revised statutes, entitled " Summary proceedings to recover the possession of lands in certain cases." Commenced originally before the county judge of Kings county, it was, upon the finding of an inquisition against the defendant, removed into this court by a writ of certiorari. The defendant traversed the inquisition, and the issue thus joined was brought

The People *v.* Carter.

on for trial on the 8th of November, 1858. A verdict of guilty, against the defendant, was entered by the direction of the court, who directed a case to be made, and the motion for a new trial to be heard, in the first instance, at the general term.

*N. F. Waring,* for the relator.

*L. Bennett,* for the defendant.

*By the Court,* BROWN, J. The evidence in this action showed that the relator, on the 21st day of October, 1856, was in the peaceable possession of a house and lot of ground at the foot of Middah street, fronting on Freeman street, in the city of Brooklyn, which was held under a lease from the defendant to the relator and her husband William Kearney, deceased, dated May 2, 1853, for the term of three years and four months from the 1st day of May, 1853. On the 21st of October, 1856, she was forcibly dispossessed and turned out of the premises by the defendant and those acting under his orders, by virtue of a warrant issued by Enoch Jacobs, who claimed to be a justice of the peace in and for the city of Brooklyn, under the act entitled " Summary proceedings to recover the possession of lands, in certain cases." The relator's term for years, and her estate in the lands, was ended at the time of the entry; for the three years and four months mentioned in the lease to her and her husband had elapsed. In *The People, ex relatione Gault,* v. *Van Nostrand,* (9 *Wend.* 50,) it was held that a party in the peaceable and actual possession of lands at the time of the forcible entry, or in the constructive possession thereof at the time of a forcible holding out, is entitled to proceed under the statute of forcible entries and detainers, although he is neither seised of a freehold nor possessed of a term for years in the premises. And also that proof of actual possession is sufficient to support the allegation in the inquisition that the complainant was possessed in fee simple. The court, in the opinion, say that the new provisions recently in-

troduced into the revised statutes bring back the statute of
forcible entry and detainer, among the most valuable of our
remedial statutes, to the original intent and purpose for which
the numerous English acts, of which our old statute was a copy,
were passed; to wit, to prevent individuals from doing them-
selves right by force, and to protect persons in the peaceable
occupation of lands from a forcible dispossession without the
authority of law.   This authority disposes of one of the prin-
cipal questions in the cause, and leaves the justification of the
defendant dependent upon the authority of Enoch Jacobs to
entertain the summary proceedings and issue the warrant for
the removal of the relator.

   The predecessor of Enoch Jacobs in the office of justice of
the peace was one James Hall, who was duly elected a justice
of the peace in the town of Bushwick while it was one of the
civil divisions of the county of Kings.   When Hall was elect-
ed, and for what term of time, does not appear; nor is it at
all material to the present inquiry.   By the act to consolidate
the cities of Brooklyn and Williamsburgh and the town of
Bushwick into one municipal government and to incorporate
the same, passed April 17th, 1854, the last named town ceased
to exist as a civil division, and became thenceforth a part of
the consolidated city of Brooklyn.   The 13th section of the
11th title of the act provides that the terms of office of the
city and town officers elected or appointed for the present cities
of Brooklyn and Williamsburgh and the town of Bushwick,
shall expire on the first day of January succeeding the passage
of the act, with certain exceptions which do not include the
office of justice of the peace.   I am inclined to adopt the rea-
soning of the dissenting opinion in *The People* v. *Keeler*, (17
*New York Rep.* 370,) that the office of justice of the peace is
not a town but a county office, and therefore is not within the
letter of the 15th section of the consolidating act to which I
have referred.   I do not see, however, that this consideration
will be of any avail to the defendant, because James Hall, the
predecessor of Jacobs, continued in his office of justice until

after the consolidation took effect, and then resigned. Enoch Jacobs thus received a commission from the governor of the state, dated the 9th day of January, 1856, appointing him a justice of the peace for the city of Brooklyn, in the place of James Hall who had resigned. I am unable to find any authority given to the governor to supply vacancies in this office in the city of Brooklyn. By the act to establish courts of civil and criminal jurisdiction in the city of Brooklyn, passed March 24, 1849, the city is to be divided into two or more districts, in each of which a justice of the peace shall be elected for the term of four years from the 1st of May. Vacancies may be filled by the common council until the next charter election after they occur, when they are to be filled for the residue of the unexpired term. (§§ 35, 37.) The governor, it would seem, was without any power to fill the vacancy occasioned by the resignation of James Hall. (*See The People* v. *Keeler, supra.*)

The counsel for the defendant insists, however, that in any aspect of the case, the acts of Enoch Jacobs are legal and effectual to protect the defendant, because he was a justice of the peace *de facto*, and in a collateral inquiry his title cannot be questioned and examined. It is doubtless true that the acts of a public officer *de facto*, or one who is exercising its duties under the forms of law and color of title, are valid, and not open to question or inquiry in a collateral proceeding. He must first be ousted by a direct proceeding, in the nature of a *quo warranto*. To entitle his acts to this immunity, however, he must be the incumbent under color of title. For instance, an elective officer may have the official certificate of the canvassers, while another may have had a majority of the votes and be really entitled to the office. In the former case the officer has all the outward forms of title, and is said to be in by color of title. His acts are valid and binding until he is ousted and the office awarded to another. In the present instance, if the governor had no power to fill the vacancy, he could not bestow upon Jacobs the outward signs and symbols

of the office. He could not therefore be said to be in by color of title. In the case of an elective office the certificate of the canvassing board is the evidence of the title, and can only be overthrown by a regular proceeding for that purpose. But the certificate of the governor, when he is without power or authority, is evidence of nothing whatever.

I think, therefore, that the defendant is without justification, and that judgment must be entered for the relator. The statute is peremptory that when the defendant is found guilty the court shall award restitution, with costs.

. [DUTCHESS GENERAL TERM, May 9, 1859. *Lott, Brown* and *Emott,* Justices.]