## SUPREME COURT.

THE PEOPLE *ex rel.* JAMES DENNIS agt. MATTHEW T. BRENNAN, Comptroller.

The payment by the comptroller of the city of New York of the salary of a deputy tax commissioner *de facto* in office under the appointment of the tax commissioners also *de facto* in office by the appointment of the comptroller, is no defence to the comptroller to the payment of the salary of a deputy tax commissioner for the same time who claims *de jure* to the office, by reason of the unlawful appointment of the *de facto* commissioners by the comptroller (INGRAHAM, J. *dissenting*).

*New York General Term, February,* 1866.
*Before* BARNARD, INGRAHAM *and* CLERKE, *Justices.*
THE relator was one of the deputy tax commissioners

of the city of New York. As such he was entitled to receive a salary of two thousand dollars per year, to be paid by the comptroller out of the county treasury. His appointment was on the 4th May, 1859.

On the 4th May, 1864, new commissioners of taxes and assessments were appointed by the comptroller of the city of New York, under a supposed authority of the act of 1859, chapter 302. These commissioners on 20th of June, 1864, removed the relator from office, and appointed another person in his place, who performed the duties of the office until June, 1865, when the court of appeals decided the appointment of such commissioners to be illegal, and the former commissioners were restored to office. In August, 1865, the commissioners notified the comptroller who were the parties entitled to be recognized as holding office under them, and among those persons was the relator as deputy tax commissioner.

This application was for a mandamus to the comptroller, directing him to pay the relator his salary as deputy tax commissioner, from 20th of June, 1864, to the 1st day of October, 1864. The justice at special term refused the application, and the relator appealed to the general term.

ISAIAH T. WILLIAMS, *for the relator.*
RICHARD O'GORMAN, *for the respondents.*

By the court, BARNARD, J. The relator makes a complete title to the relief he asks for. He was prior to June, 1864, legally appointed a deputy tax commissioner of the city and county of New York, and he has not since been removed. His salary has been fixed in the manner and for the amount provided by law. The money for the salary of the person who was rightfully entitled to this particular office has been paid into the treasury, and it has not been paid to the relator. It is made the duty of the comptroller to pay the same " out of the county treasury." Mandamus

is the proper remedy to compel the performance of this duty by him. It is difficult to see how a defence can be made to the granting of this writ, with these facts all remaining unquestioned by the respondent, but such defence is made upon the facts contained in the papers, which are briefly these:

On the 5th day of May, 1864, the comptroller, believing that he had the power by law so to do, appointed two men commissioners of taxes and assessments, and reappointed one in the places of those who then held the office. These new commissioners appointed deputies in the place of those who were appointed by the old commissioners, including the relator; that the new commission, with their appointees, entered upon the duties of their several offices, and continued performing the same for a considerable portion of the time for which relator now claims compensation, when the appointment by the comptroller was declared null and void by the court of appeals, and the old commissioners so removed were reinstated by judgment of that court, with a right to the emoluments of the office during the time they had been displaced; that the comptroller paid to the appointees of the new commissioners the salaries belonging to the office, and that, therefore, there is no money in the treasury applicable to the payment of relator's claim. These facts present three questions. First: Were these commissioners and their deputies *de facto* officers? Second: If they were, what defence does that fact furnish to the comptroller in the present case? and third: What effect has it upon relator's claim? I am aware that there are many cases holding the acts of *de facto* officers when they came to their office by color of title, good as to the public and third persons who have an interest in the act done; but an examination of these cases will show no case like this in principle.

*The People* agt. *Collins* (7 *Johns. R.* 549), *held* that the acts of commissioners of highways, duly elected, could not

be collaterally assailed by a town clerk, because they had not taken the oath of office. In *McKinstry* agt. *Tanner* (9 *J. R.* 133), it is only declared that a defendant in a suit before a justice of the peace, duly elected, could not make an issue that the justice was a minister of the gospel. The case of *Wilcox* agt. *Smith* (5 *Wend.* 231), was an action of trespass against a constable, who was protected by his execution, upon proof that the justice had acted as such, and that he had color of title. The case of *The People* agt. *Stephens*, decides that a certificate of the canvassers of an election gives color of right to an office, which right could not be assailed collaterally. None of these cases show these commissioners to have had color of title. In *The People* agt. *Coster* (29 *Barb.* 208), it is decided that when a governor had no power to fill a vacancy in an office, he could not bestow the outward signs and symbols of the office, and that the officer appointed by him could not be said to be in office by color of title, and a ministerial officer was not protected by the warrant of such officer. As to the second question—if they were *de facto* officers, does that protect respondent in this case? The reason given for the protection of ministerial agents of *de facto* officers is, that the right to the particular office cannot be assailed except by direct action. There is no such reason here. Salary and fees are incident to the title, and not to the colorable possession of an office. The title of the persons who have been paid by the comptroller was a fact which he could have put in issue before payment to them (*People* agt. *Tieman*, 8 *Abb.* 359). These commissioners were not *de facto* officers, and the comptroller could have defended himself from payment to the *de facto* officers—if they were so—by denying their title to the office; but finally assuming these commissioners to have been *de facto* officers, and that defendant would be protected in his payment to them as against the city, what has this to do with relator's claim? He is the *de jure* officer. He alone is entitled to the salary.

He has done nothing to destroy his right. The money for him was by the city paid into its treasury. He seeks it from the treasury, and not from the comptroller. It is no defence to his claim for the comptroller to say he has made a mistake, and has paid it to the wrong person. The comptroller could do no act to destroy relator's claim to money put in the treasury for his payment without his consent; as to him the money is yet in the treasury. These consequences, I think, legally flow from the decision of the court of appeals. No one was more strongly convinced than I was of the power of the comptroller to make the appointment of the tax commissioners, but it has been decided otherwise by the highest court, and it is my duty to accept the decision.

I therefore think that the order should be reversed, with costs.

INGRAHAM, J., dissenting. There are several technical reasons why the application in this form should not be granted.

1. The writ of mandamus is never granted to enforce a doubtful right. There must be a clear legal right to what is asked for, both as to the subject matter and as to the parties. (*People* agt. *Supervisors of Greene Co.* 12 *Barb. S. C.* 216; *People* agt. *Canal Board*, 13 *Barb.* 444; *People* agt. *Supervisors of Columbia Co.* 10 *Wend.* 366; *People* agt. *Supervisors of Chenango Co.* 1 *Kern.* 563.) It is, to say the least of it, a matter of doubt whether there are any moneys in the treasury applicable to this payment for part of the time embraced in the period stated by the relator, for the reasons which will be hereafter noticed.

2. It follows from the above proposition, if correct, that the relator has asked for greater relief than he has a clear, legal right to demand; and if so, he cannot on this writ obtain the partial relief which he may be otherwise entitled to. Hence, if a party asks for greater relief than he

is entitled to, the application must be denied (*People* agt. *Supervisors of Dutchess*, 1 *Hill*, 50, 55).

3. Where the relator has any other remedy, the writ does not issue. (*People* agt. *Haws*, 37 *Barb.* 440 ; *People* agt. *Mead*, 24 *N. Y.* 114, 122.)

I do not, however, propose to put the decision of this case on these technical grounds, because upon the merits I do not think the relator entitled to the writ.

When the comptroller paid the moneys raised and appropriated for the payment of these officers to another person, such person had been appointed to the office in the place of the relator by the persons who had been appointed as commissioners of taxes, and who were then in charge of the office, and performing the duties of it. The relator on being removed had ceased to act, and his successor was acting in discharge of the duties. These commissioners then acting under color of title, made the removal and appointment ; their acts as officers *de facto* while in the actual discharge of the duties of the office are valid, as far as it concerns the public or third persons having an interest in them (*People* agt. *Collins*, 7 *J. R.* 552, 554). It is there said : It certainly did not lie with the defendant, as a mere ministerial officer, to adjudge the act of the commissioners null. It was enough for him that those persons had been elected commissioners within the year, and were in the actual exercise of the office (*McKinstry* agt. *Tanner*, 9 *J. R.* 125). So an individual coming into office by color of an appointment is an officer *de facto*, and his acts in relation to the public or third persons, are valid until he is removed, although it be conceded that his election or appointment was illegal (*Wilcox* agt. *Smith*, 5 *Wend. p.* 231, 234).

In *The People* agt. *Stearns* (5 *Hill*, 616), BRONSON, J., says in regard to this question : "Having this color of title, he voted on the balloting for clerk, and if it be conceded he was not an alderman *de jure*, still his vote was

not an absolute nullity." The peace and good order of society absolutely require that the acts of an officer *de facto* should be held valid as to third persons. Nor could the title of these deputy tax commissioners be inquired into collaterally (*Hall* agt. *Luther*, 13 *Wend.* 491).

For these reasons, I think it very apparent that the comptroller had no right, and if so, had no power, to institute any inquiry into the legality of their appointment prior to the payment of their salaries. They were appointed by officers *de facto* in office, and they discharged the duties of the office down to the time when the old commissioners were restored to office. If he had refused the payment of their salaries, the court would have granted a mandamus to compel it, more especially after the general term had decided that the new commissioners were rightfully in office.

This is not the case of one claiming to continue in office after the term had expired, or who has usurped an office without any appointment or election, and is holding without color of title. To such an one the above remarks are not applicable, and although he may continue to exercise the duties, he has no right to the compensation. In such a case an application to compel payment of the salary may properly be denied (*People* agt. *Tieman*, 8 *Abb. Pr.* 359).

The comptroller then was not bound to refuse payment to these officers while they were discharging the duties of their office, and until the new commissioners were restored to their offices as commissioners of taxes and assessments. If so, he is not liable for any misappropriations of the funds so paid, and there is no ground for the argument that the money raised by tax and appropriated for this purpose is to be considered as still in the treasury.

I can, however, see no good reason why after the notice served by the tax commissioners upon him, the comptroller should refuse to pay the subsequent accruing salary. That

notice contained the names of the persons who were deputy tax commissioners under the commissioners, and he was then bound to recognize them as duly appointed by the commissioners who were lawfully entitled to the office.

For these reasons, I am of the opinion that this application was properly denied, and that the relator's remedy is by an action against the parties who have received the salary, if he has any right to recover any salary during the period they held the office.

Order appealed from should be affirmed, but without prejudice to a new application at special term, if the comptroller refuses payment after August, 1865.