# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

---

THE PEOPLE ex rel. Benjamin Brown, vs. DAVID BLAKE.

The act of the legislature, incorporating the village of Edgewater, passed March 22, 1866, provided that there should be seven trustees, four of whom should be elected in May, 1868, and three of whom should be elected in May, 1869, who should hold their office for two years. The act also provided that four persons *named therein* should be trustees from the passage thereof, until the election of their successors in May, 1868, and that three other persons, *named therein,* should be trustees from the passage of the act until the election of their successors in May, 1869. *Held,* that the appointment of the trustees named in the act was in violation of article 10, section 2, of the state constitution.

A WRIT of *habeas corpus* was issued, directed to the defendant, requiring him to have the body of Benjamin Brown, the relator, before Justice GILBERT, at the chambers of the Supreme Court, in the city of Brooklyn, on the 26th day of May, 1866. The defendant made return to the writ, that on the 10th day of May, 1866, by virtue of the warrant annexed to the return, he arrested the relator, and held him

in custody, under and by virtue of said warrant. The warrant was as follows :

"State of New York, town of Middletown, village of Edgewater, *ss.* The people of the state of New York, to any constable of the county of Richmond, or any policeman of the village of Edgewater, greeting :

Whereas, complaint has this day been made, on oath, to the undersigned, police justice of the village of Edgewater, by Geo. M. Root, president of the board of trustees of the said village of Edgewater, that he is one of the trustees of the village of Edgewater, at the town of Middletown, in the county of Richmond, and state of New York ; that J. C. Cavelti, Chas. Bischoff, O. Wm. Bird, William W. Lee, T. C. Moffatt and R. M. Hazard are the remaining trustees of said village, and, together with deponent, who is the president thereof, form the board of trustees of said village.

That the said board of trustees have duly organized, in pursuance of an act of the legislature, entitled 'An act to incorporate the village of Edgewater,' passed March 22, 1866 ; that, Benj. Brown, P. G. Bender and Jas. McLarney are, and were at the passage of said act, road commissioners and commissioners of streets of the Stapleton road district, at the town of Middletown and county of Richmond ; that said board of trustees, by resolution duly passed, through their clerk demanded that the said road commissioners should give up, and render an account of all moneys, bonds and papers in their possession to the said trustees of said village, but the said Benjamin Brown, Philip G. Bender and James McLarney, then and there being the road commissioners and commissioners of streets of the Stapleton road district, at the town of Middletown and county of Richmond, against the peace of the people of the state of New York, and their dignity, and the statute in such case made and provided, willfully and unlawfully wholly failed, neglected and refused and still willfully and unlawfully, wholly fail, neglect and refuse to give up or render such an account of the money, bonds and

The People *v.* Blake.

papers in their possession or held by them by virtue of their office, to the said trustees of the said village of Edgewater, whereby, in pursuance of the said act of incorporation of said village of Edgewater they and each of said road commissioners became and were guilty of a misdemeanor, to be prosecuted by the trustees of said village, before the police justice thereof.

These are therefore in the name of the people to command you forthwith to take the said Benj: Brown, Philip G. Bender and Jas. McLarney, road commissioners and commissioners of streets for the Stapleton road district, and bring them before me, to be dealt with according to law. Wherefore fail not at your peril.

Given under my hand, the 9th day of May, 1866.

(Signed,)      THOMAS GARRETT, police justice."

On the return day of the writ, upon reading and filing the petition and writ of *habeas corpus*, and the return thereto, and after hearing counsel for the respective parties, it was ordered by the said justice, that the relator be, and he thereby was, discharged from the imprisonment and discharge in said writ charged.

The following opinion was delivered by the justice, before whom the writ was returnable :

GILBERT, J.  "The relator is held by the respondent under a warrant issued to him as a policeman of the village of Edgewater by Thomas Garrett, a police justice of that village, and having been brought before me on a writ of *habeas corpus*, his discharge is demanded on the ground that neither the respondent or the justice are legally constituted public officers.

The act incorporating this village, passed March 22, 1866, provides that there shall be seven trustees, four of whom shall be elected in May, 1868, and three of whom shall be elected in May, 1869. These trustees are to hold their office for two years. The act also provides that four persons *named therein*

shall be trustees from the passage thereof until the election of their successors at the annual election in May, 1868, and that three other persons *named therein* shall be trustees from the passage of the act until the election of their successors, at the annual election in May, 1869. It authorizes the trustees to choose, among other officers, six policemen, and provides for the election of a police justice. It also provides that the places of holding the polls shall be determined by the trustees ; that notices of the election shall be given by them ; that they shall appoint the inspectors and poll clerks of the election ; and that the result of the election shall be certified by such inspectors.

The respondent was appointed a policeman by the persons named in the act, acting as a board of trustees, and the police justice was elected at an election held under their authority. The question presented is, whether the appointment of the trustees of the village, now claiming to hold that office, namely, those named in the act, is in violation of article 10, section 2, of the constitution ; for if the appointment of the trustees is void, their appointment of the respondent conferred no authority on him, and the election of the police justice under their direction was also invalid ; (*People* v. *Carter*, 29 *Barb.* 208 ; *Re Whiting*, 2 *id.* 528 ; *People* v. *Albertson*, 8 *How Pr.* 363 ; *People* v. *White*, 24 *Wend.* 526, 539, *et seq.* 550, 564 ;) and the prisoner would be entitled to his discharge, because the process under which he is held is illegal and void. Does not the constitution, by necessary implication, then, prohibit the legislature from appointing these trustees ? The language of article 10, section 2, is : ' All village officers whose election or appointment is not provided for by this constitution, shall be elected by the electors of such village, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose.' If, then, the gentlemen named in the act are ' village officers,' the question of the validity of their appointment by the legislature is not an open one.

The Court of Appeals have settled it against them. (*People v. Draper,* 15 *N. Y. Rep.* 532. *See also same* v. *Metropolitan Police Board,* 19 *id.* 204; *Same* v. *Pinckney,* 32 *id.* 377.) These cases show that the provision of the constitution referred to embraces officers of newly incorporated villages, as well as those of villages which had been created previous to the adoption of that instrument, and I entertain no doubt that such is its legal effect. It is contended, however, that under the authority conferred upon the legislature by article 10, section 4, of the constitution, to designate the time for the election of officers named in that article, it is competent for them to fix the election of the first board of trustees of a village, indefinitely, and then appoint, as was done in the act under consideration, a temporary board of trustees, to serve until the election of trustees shall occur, and that the persons so appointed trustees by the legislature are not *village officers* within the meaning of the prohibition contained in section 2 of article 10 of the constitution.

Although this view has been urged with much force and ingenuity, and by counsel of eminence, I am unable to concur in it. I think such a determination would give legal sanction to a plain evasion of the constitution, and would in effect, lead to a practical annulment of the restriction aforesaid; for if the legislature can appoint temporary trustees for one year, they may do it for any number of years, the only limit on their power in this respect, upon the construction contended for, being their own will in designating the time for the election of permanent trustees. The possibility of such a result satisfies me that the proposition of the respondent's counsel on this subject ought to be rejected.

Let the prisoner be discharged."

From the order entered in pursuance of the above decision, the defendant appealed to the general term.

*N. Dane Ellingwood,* for the appellant. I. The legislature, by the 1st section, title 2, of the act in question, directed the trustees of the village *to be elected by ballot;* and in so doing fully complied with the requisitions of the constitution in that regard. *(See article* 10, § 2, *of the Constitution.)*

II. By the 4th section of article 10 of the constitution, the legislature is authorized to designate *the time* for the election of all officers named in that article. In conformity with the power so granted, the legislature designated the third Tuesday in May, 1868, and the third Tuesday in May, 1866, as the time fixed for the first annual election of trustees. *(Section 3, title 2.)*

III. It is to be observed that the constitution not only *expressly* permits the legislature to designate the time for the first annual election of trustees, but that such power is granted without such *restriction* or *limitation;* leaving the exercise of such power to the discretion of the legislature. The presumption is that such discretion was, in the present case, exercised for the public good. *(The People* v. *Draper,* 15 *N. Y. Rep.* 544.)

IV. The makers of the constitution, by granting to the legislature such discretionary power, evidently contemplated a possible interval to arise between the time when an act should take effect and the first annual election of trustees ; during which, in the exercise of its plenary powers *(see Tappan* v. *Gray,* 9 *Paige,* 510) the legislature might appoint *temporary* trustees.

V. J. C. Cavelti, Charles Bischoff and the others named in the second section of the act incorporating the village of Edgewater were appointed *temporary* trustees; and they not being parties to the present proceedings, the validity of that section, so as to affect their appointment, cannot now arise. Until such question does arise and is determined, so as to preclude them from exercising the powers conferred upon them, they are, in contemplation of law, to be regarded

as officers *de facto;* however questionable their authority may be. (*The People* v. *Collins,* 7 *John.* 549.)

It seems to have been admitted that the act in question, so far as it regards the trustees who are directed to be elected by ballot, in pursuance of section 1, title 2, and so far as it regards the time designated for their first annual election, in pursuance of the second and third sections, was made in conformity with the constitution. But the court held that the persons named in the second section, and who were appointed by the legislature to act as trustees until the first annual election, are, in point of fact, "village officers" coming within the meaning of section 2, article 10 of the constitution. This conclusion certainly does not seem to be warranted by the act. The term "village officer," as used in the constitution, is to be understood as designating persons who, with their successors in office, possessed not only like powers, but also *like qualifications* for the office; the term also implies *permanency* in office. In the present case, the trustees, answering to this definition of the term "village officers," are required to "be residents, tax payers and legal voters within the village and their respective wards." (*Sec. 1, title* 2.) It does not appear that the persons named in the second section are either residents or tax payers of the contemplated village, or of either of the wards. In these respects, then, they differ materially from the trustees designated in the first section, and cannot therefore be regarded as *of the same class of officers.* Besides, the first section places the goverment of the village under seven trustees to be elected by ballot, who are permitted to hold their respective offices until their successors shall be duly elected and qualified, thereby giving *permanency* to the office. Now, can the trustees first to be elected be deemed, in contemplation of law, *successors* to the persons named in the second section, *within the spirit and meaning of the constitution ?*

In construing a statute, where words are used which have

a doubtful meaning, the object or intention of the legislature may be resorted to, to explain them. We are told in the case of the *People* v. *Utica Ins. Co.*, (15 *John.* 380, 381,) that "a thing which is within the statute is not within the statute unless it be within the intention of the makers." The persons named in the second section are called "trustees," it is true, and the trustees referred to in the first section are termed "their successors," that is to say successors of the persons named in the second section; but these terms are both indefinite or uncertain. A trustee may or may not be a "village officer" within the meaning of the constitution, and it may have been used in the present case for the purpose of giving greater facility to the phraseology of subsequent sections of the act; and so again in regard to the term used of "their successors," which may have been intended simply to mean those who were to succeed the persons named in the government of the village, without any reference whatever to the term "successors," as implying permanence in office, within the meaning of the constitution. In order to clear away these apparent ambiguities, it is necessary to inquire what was the object or intention of the legislature. The act took effect immediately on its passage; but the first election of trustees could not take place until May, 1868; and inasmuch as all other acts, inconsistent with the act then passed, were either repealed or modified, (*see* § 14, *title* 7,) it became a matter of necessity that some one or more persons should be appointed to perform the duties of trustees, as prescribed by the third title, until an election could be made; besides, it was a matter of necessity that some one or more persons should be appointed to carry out the requisitions of the act (*see* § 9, *title* 2) *preliminary* to the first annual election of trustees. To accomplish these objects, then, the persons named in the section in question were appointed by the legislature. Our courts will not permit an object or intention, if it be lawful, to be frustrated, when it is apparent or made manifest, although the language

The People *v.* Blake.

used to express that object or intention should be inadequate for the purpose. Judge Oakley remarked, in the case of the *People* v. *The Supervisors of Orange*, (17 *N. Y. Rep.* 241,) "it is not a light thing to set aside an act of the legislature, even when the objections to its validity are grave and weighty; when they touch not the substance of the law, or the authority of the legislature to pass it, but are mere criticisms upon its form or phraseology, the exercise of such a power by the judiciary of the state would be prolific of evil and would soon be unanimously condemned." Shall the section in question, then, be declared invalid because the word "trustees," was used in lieu of the word "commissioners," or any other term expressive of an agency; when the object of the legislature is otherwise made clear and manifest?

It was assumed, upon the argument in the court below, that the legislature did, by the section in question, intend to abridge the right of the people to elect their own village officers; but this cannot be presumed. It was remarked by Denio, Ch. J. in the case of *The People* v. *Draper*, (15 *N. Y. Rep.* 545,) that "the courts cannot impute to the legislature any other than public motives for their acts." Besides, it is to be observed, that the right of the inhabitants to elect their own "village officers" *did not mature* until the organization should be finally completed by the first annual election of trustees in May, 1868; and until such election should take place, the incorporation was, in fact, only partially created, and the right now claimed for the people was inchoate. This was the necessary consequence or effect of the exercise, by the legislature, of the discretionary power conferred upon them by the 4th section of the 10th article of the constitution.

I do not understand the court below to have imputed any wrong or improper motive to the legislature in designating the first Tuesday in May, 1868, (a time fixed definitely, and not *indefinitely*, as was supposed by the court,) for the first

annual election of trustees.　Nor do I understand the court
to have passed upon the propriety or impropriety, prudence
or imprudence of the exercise, in the present instance, of the
discretionary power conferred upon the legislature.　But I
do understand, however, the court below to have held that
the power so conferred *may be subject to abuse,* and that for
that reason the section in question was objectionable.　This
objection may be urged against any law in which a discre-
tionary power may have been granted.·　In granting such
power, the makers of the constitution no doubt reposed the
fullest confidence in the legislature, that it would be exer-
cised by them for the public good, and our courts will sustain
this presumption, until a case occurs where it is manifest
that such confidence has been abused.

It was also urged, in the court below, that there was no
power conferred upon the legislature, by the constitution, *to
make appointments ;* although they might delegate such
power to others.　This, I presume, was not necessary.　They
possessed it by virtue of their plenary powers.　In speaking
of masters in chancery, and some other officers, who by the.
constitution were only to be appointed by the governor, Chan-
cellor Walworth, in the case of *Tappan* v. *Gray,* (9 *Paige,*
510,) remarked : " But as it was merely intended to make
a temporary provision for the performance of the duties of
these officers, until the offices could be filled in the consti-
tutional mode, I presume it is within the legitimate powers
of legislation."　Again, in alluding to the general powers of
the legislature, Denio, Ch. J. in the case of *The People* v.
*Draper,* (15 *N. Y. Rep.* 543,) remarked : " The people, in
passing the constitution, committed to the legislature the
whole law making power of the state, which they did not
expressly or impliedly withhold.　Plenary power in the legis-
lature for all purposes of civil government is the rule.　A
prohibition to exercise a particular power is an exception.
In inquiring, therefore, whether a given statute is constitu-

The People *v.* Blake.

tional, it is 'for those who question its validity to show that it is forbidden ;" or in other words, if an attempt be made to invalidate the section now in controversy, on the ground that the legislature had no power to appoint the persons named in that section, it is necessary to show that the constitution, either expressly or impliedly, prohibits it.

I will submit one other ground for the consideration of the court. The persons named in the section in question were at least officers *de facto,* and as such their acts in relation to the subject matter of the present proceedings should have been upheld. The public good required it. All acts inconsistent with the act in question are either repealed or modified, (*see* § 14, *title* 7,) and unless the persons so named are permitted to perform the duties prescribed by the third title, the inhabitants of the contemplated village are, I may be allowed to say, without law.

It was not sufficient to allege that the section in question was unconstitutional, and therefore the persons named did not possess even a colorable authority. That question could not be disposed of so as to oust them from the performance of the duties prescribed by the act, unless in proceedings to which they were made parties, (see fifth point ;) and until that question be disposed of, they are, in contemplation of law, officers *de facto.*

Perhaps no more apt illustration of the rule that public policy requires that the acts of persons claiming to be public officers under a colorable authority should be upheld, can be offered, than the case now presented. The relator was charged with a misdemeanor, and arrested. For the purpose of the present argument, I may be allowed to assume that he was guilty of the offense charged. The question then arises, is it allowable that this man should escape the punishment due to his offense because the authority under which the arrest was made is questionable on constitutional grounds ? That question might have been diposed of upon

an information in the nature of a *quo warranto* against the persons exercising the assumed authority ; and if the section in question, which conferred upon them the authority assumed, had been declared invalid, and their appointment void, the executive of the state might perhaps have been resorted to, to fill a vacancy occasioned "by the decision of a competent tribunal declaring void" such "appointment." (1 *R. S.* 5th ed. *p.* 413, 7th *subd, of the* 4th *section.*) The court below, however, did not feel warranted, in the absence of parties who were to be affected by the decision, to pronounce the section in question invalid and their appointment void ; but the decision that was made, nevertheless, *paralyzed their power,* and accomplished, in effect, what the court refused to do in the case of *The People* v. *Draper,* (24 *Barb,* 265,) where an application was made for an injunction to restrain the exercise of an assumed authority, whilst proceedings in the nature of a *quo warranto* were pending to test the validity of that authority on constitutional grounds. In delivering the opinion in that case, the judge remarked, (*see pp.* 267, 268,) " I am inclined to think that such relief has not been deemed consistent with the interests of the state, with enlightened policy, or with the general principles which must govern as to an office emanating from the sovereign power, and that hence it has never been adopted in practice ; that the public welfare has been deemed to require that an actual incumbent of an office should not be forbidden to perform the duties of it for the time being, even though his title to the office were doubtful ; that the public should not be deprived of the benefit of an office merely because it was uncertain whether the person in, and ready to perform the duties of it, were there rightfully, even while the title of the party assuming to act should be in controversy. To restrain the action of the incumbent is to restrain all the functions of the office ; for he being in,

even if wrongfully, no one else can enter until he is removed, and he 'must act, or no one can."

*Lot C. Clark*, for the relator.

After hearing the arguments of counsel, upon the appeal, the court at general term, affirmed the decision of Justice GILBERT, adopting his opinion as that of the court.

Prisoner discharged.

[KINGS GENERAL TERM, February 11, 1867. *Lott, J. F. Barnard* and *Gilbert*, Justices.]