## VILLAGE OF CANASERAGA v. GREEN.

### (Allegany County Court. December 19, 1903.)

1. **WATER COMMISSIONERS—DE FACTO OFFICERS—VERBAL APPOINTMENT.**
   Under Village Law (Laws 1897, pp. 377, 386, c. 414) §§ 43, 68, declaring that the board of water commissioners shall be appointed by the board of trustees, and that all offices, except certain specified ones, not including water commissioner, shall be appointive, a water commissioner verbally appointed by the board of trustees is an officer de facto for the purpose of making an assessment for fire protection under section 230 (page 435), as amended by Laws 1902, p. 1628, c. 591.

2. **SAME—COMMISSIONER HOLDING OVER.**
   So, also, is a regularly appointed commissioner holding over after expiration of his term.

3. **SAME—COMMISSIONER ELECTED.**
   Village Law (Laws 1897, p. 386, c. 414) § 68, provides that the board of water commissioners shall be appointed by the board of trustees; and section 43 (page 377) provides that certain offices, not including water commissioner, shall be elective, and the rest appointive, except that the offices of clerk and street commissioner may be made elective by adoption of a proposition to that effect. A village adopted a proposition to make the office of water commissioner elective, and elected a water commissioner, who assumed to act as such. *Held*, that this commissioner did not hold office under color of title, so as to make him an officer de facto for the purpose of making an assessment for fire protection under section 230 (page 435), as amended by Laws 1902, p. 1628, c. 591.

4. **ASSESSMENT FOR FIRE PROTECTION—LEGALITY—EVIDENCE.**
   In an action by a village to recover an assessment for fire protection imposed by the board of water commissioners under Village Law (Laws 1897, p. 435, c. 414) § 230, as amended by Laws 1902, p. 1628, c. 591, defendant, for the purpose of showing that a part of the assessment was for an illegal purpose, offered the report of the commissioners for the year preceding that in which the assessment was made, showing that during that year they had paid one of their number a salary for acting as superintendent, but there was no offer to show that any such payment was contemplated for the year during which the assessment was made. *Held*, that the exclusion of the evidence was not such error as to require reversal of a judgment for the village.

5. **SAME—CONSTITUTIONALITY OF STATUTE—DUE PROCESS OF LAW.**
   Village Law (Laws 1897, p. 435, c. 414) § 230, as amended by Laws 1902, p. 1628, c. 591, providing that a building and the lot on which it stands, in which water from the waterworks is not used, or which does not take water from the waterworks corporation, standing within 500 feet of a hydrant, may be assessed for fire protection, etc., is unconstitutional, as a taking of property without due process of law.

Appeal from Justice Court.

Action by the village of Canaseraga against Egbert P. Green. From a judgment for plaintiff, defendant appeals. Reversed.

Fred A. Robbins, for appellant.

Wm. C. Windsor, for respondent.

REYNOLDS, J. Appeal from a judgment rendered October 3, 1903, by C. K. Bacon, a justice of the peace, in favor of the plaintiff and against the defendant, for the sum of $3.74 damages and $2.95 costs. This action was brought to recover an alleged assessment against the property of defendant under the provisions of section 230 of the village law (Laws 1897, p. 435, c. 414), as amended by chapter 591, p. 1628, of the Laws of 1902. This statute reads as follows (section 230, "Assessment for Fire Protection"):

"A building and the lot upon which it stands, in which water from the water works is not used, or which does not take water from the water works corporation, standing within five hundred feet of a hydrant, may be assessed by the board of water commissioners for fire protection. Notice of the proposed assessment and that the board will meet at a time and place specified therein to hear objections thereto must be served upon the owner or occupant of the building at least ten days before such meeting. The board shall meet at the time and place specified in the notice, and after hearing objections shall complete such assessment. Upon the completion of the assessment the board shall make a certificate thereof and deliver the same to the treasurer. The treasurer may receive such assessment for thirty days without fee, and after that time an action may be brought to recover the assessment, or a special warrant may be issued therefor, or the amount may be included in the next annual tax levy."

The claim of the plaintiff is that on the 16th day of June, 1903, John A. Daley, O. S. Pratt, and A. J. Thomas, acting as the board of water commissioners of the village of Canaseraga, made an assessment for fire protection under the above statute, and on the 6th day of July, 1903, said board met, and reviewed and completed said assessment; that there was included in this assessment the sum of $3.74 assessed against the defendant as the owner of two buildings known as the "Valley Cottage Hotel and Barber Shop," situate on Main street, in that village, and within 500 feet of a hydrant; that the said assessment was placed in the hands of the village treasurer for 30 days, and, the defendant not having paid said assessment, this action was brought to collect the same.

The defendant claims that the judgment was erroneous for the following reasons, viz.: First, that the persons who attempted to make said assessment were not a legally appointed board of water commissioners of the village of Canaseraga, and did not have sufficient color of title to constitute them a de facto board; second, that the justice erred in rejecting evidence which would have shown that the said assessment was made in part for the illegal purpose of raising money to pay the salary of one of their number; third, that the statute under which such assessment was made is unconstitutional and void.

It appears that in 1895 the village of Canaseraga established, and have since operated, a system of municipal waterworks. Water commissioners were appointed from time to time, and proceedings were had under the Laws of 1875, p. 157, c. 181, which was the statute then governing village waterworks. In 1897 the village law was enacted, which repealed the act of 1875, and in the statute, which since the year 1897 has governed this subject, section 68 of the village law provides for

the continuance of the board of water commissioners then in office, and further provides, "All such commissioners shall hereafter be appointed by the board of trustees, and the terms shall be so adjusted that one shall expire in each official year." Section 43 of the village law provides that the president, trustees, treasurer, collector, police justice, and the assessors shall be elective officers, and that all other village officers shall be appointed by the board of trustees, and it also provides that a proposition may be adopted at a village election to make the offices of clerk and street commissioner elective. There is no such provision in regard to the board of water commissioners. It would seem from the foregoing that the only proper method of creating a water commissioner is by appointment by the board of trustees of the village.

In the spring of 1902 the board of trustees of the village of Canaseraga met, and, by resolutions duly adopted and entered in their minutes, appointed one Colegrove water commissioner for the term of three years. Colegrove, on being informed of his appointment, refused to act, and the board, on the same or following day, in the absence of their clerk, again met, and appointed John A. Daley. The appointment was verbal, and no record was made of it. Daley filed his oath of office, and ever since such time has been acting as one of the board. In the spring of 1900 O. S. Pratt was appointed commissioner for three years, and his term expired in the spring of 1903. He has never been reappointed, but has assumed to hold over after the expiration of his term, and is still acting as one of the water commissioners of the village. On March 21, 1901, one Norman S. Fay was duly and legally appointed water commissioner of the village of Canaseraga for the term of three years. He qualified as such officer, and entered upon the performance of his duties. He has never resigned, and his term does not expire until the spring of 1904. It is conceded that Norman S. Fay took no part in making the assessment in question, did not sign the roll, did not attend the meeting at which the assessment was made, and there is no proof, and in fact no claim was made, that Fay was ever notified of the said meetings, or any of them. In the spring of 1902 the electors of the said village adopted the proposition that the office of water commissioner be elective, and in the spring of 1903, at their annual village election, they elected A. J. Thomas a water commissioner for said village. He filed his oath of office, and has assumed to act as one of the water commissioners. He was never appointed by the board of trustees, and his only title rests upon the fact that he was voted for at the village election and declared elected. It thus appears that the board of water commissioners who assumed to levy this assessment, and upon whose action the recovery herein is based, was composed of Daley, who holds under verbal appointment; Pratt, who is holding over after the expiration of his term; and Thomas, who claims his office by authority of the village election.

Passing to the consideration of the first point raised by the appellant, as to the legality of the appointment of the board of water commissioners, I am of the opinion: That, under the authorities in this state, John A. Daley was an officer de facto, although, his appointment being by parol, it came from the trustees of the village, who had a right to make that appointment; and I think he was acting under color of title, and

for the purposes of this action he was an officer de facto. That O. S. Pratt, although his term of office had expired, was still holding over under color of title, having been appointed by the proper authorities, and was a de facto officer. Thomas, having been inducted into office by the voters, who had no power under the law to elect a water commissioner, is not holding office under color of title. People v. Albertson, 8 How. Prac. 363, in which case the defendant was indicted for perjury in giving testimony before a justice of the peace. The justice of the peace was appointed to the office when the statute required he should be elected. The court held that the appointment was void, and that the justice was not an officer de facto, and holds:

"An officer de facto is one who acts under color of title. which color can only be given by a power having authority to fill the office. In the case of elective officers, the electors of the proper district confer the title, or color of title; and, in the case of officers who must be appointed, it is the appointing power who does this. * * * But when the appointment is made by persons having no authority to appoint at all, the appointment is not voidable, merely, but absolutely void. It gives no color of title."

In the case of People v. Carter, 29 Barb. 208, a justice of the peace had been appointed to the office by the Governor of the state, and it was held, "The certificate of the Governor, when he is without power or authority, is nothing whatever." People v. Brennan, 30 How. Prac. 417; Rochester & G. V. R. Co. v. Clarke National Bank, 60 Barb. 234; People ex rel. Brown v. Blake, 49 Barb. 9.

Wilcox v. Smith, 5 Wend. 231, 21 Am. Dec. 213, cited by the respondent, does not apply to the case at bar, for in that case the question under consideration was whether a constable was justified in executing a process regular on its face, although the officer issuing such process was but an officer de facto; holding:

"Evidence establishing the fact that the officer issuing the process is an officer de facto is not merely prima facie evidence that he is an officer de jure, for it is conclusive for the protection of the ministerial officer required to execute such process."

In that case the constable was sued for trespass in taking property under an execution, and the court held that the constable was protected as long as the execution was regular on its face, and issued by a de facto officer. But the same court holds that:

"The mere claim to be a public officer, and the performance of a single act, or even a number of acts, in that character, would not, perhaps, constitute an individual an officer de facto. There must be some color of an election or appointment, or an exercise of the office, and an acquiescence on the part of the public for a length of time which would afford a strong presumption of at least a colorable election or appointment."

But in the case at bar no such presumption can arise. For it is conceded that Thomas' title to his office is colorless, having come from a source that had no power to confer it. Thomas holds no more title to the office of water commissioner, from having received a majority of votes at a village election held at Canaseraga, than he would if he had received the appointment from himself or any resident of the county. If Thomas is holding office under color of title, it would be impossible to find a case where a person was assuming to act in an official capacity

that he could not say he was holding the office under color of title. The case of Dolan v. Mayor and others of the City of New York, 68 N. Y. 274, 23 Am. Rep. 168, cited by the learned counsel for the respondent, is only an authority that disbursing officers, whose duties were to pay official salaries, had a right to rely upon the apparent title of an officer de facto, and to treat him as an officer de jure, without inquiring whether any other has a better right to the office. President, Managers & Company of the Delaware & Hudson Canal Company v. Atkins, as Collector, 121 N. Y. 246, 24 N. E. 319, does not aid the respondent, for in that case the plaintiffs sought to restrain the collector by an injunction from collecting a tax, and the court denied the application upon the ground that the action was not maintainable, both because public policy would not warrant such an interference with the process of taxation, and because ample remedies existed at law. The case of People v. McDowell (Sup.) 23 N. Y. Supp. 950, was where one Thompson was elected excise commissioner in the place of a Mr. Hendryx, whose term of office had not expired, and consequently there was no vacancy to fill. Upon the trial, and after evidence was closed, the defendant's counsel insisted that he had a right to have the jury determine that the people having elected Thompson as successor to Hendryx, based upon Hendryx's refusal to act, Thompson had a right to issue licenses—in other words, was a de facto excise commissioner. The trial court held that the election of Thompson was void. On appeal the General Term reversed the decision, and held that the election of Thompson made him a de facto officer, and his acts were valid. This case is an authority for the respondent in so far as Thomas was assuming to hold an office that belonged to Fay. If that was the only question to be considered, then Thomas, perhaps, would be an officer de facto. But the distinction is here: Thompson, in the McDowell Case, received his office from the powers that had a right to elect him, while Thomas received his office from a source that had no possible right to confer the office upon him. It must be borne in mind that in the McDowell Case they were seeking to convict a citizen of a crime for an act done, that the law said he might do if permitted by the excise commissioner, and Thompson was assuming to act as such under color of title; and a liberal rule should be adopted to protect a person from being branded as a criminal when the crime depends whether a person is an officer de facto or not.

I am aware that there are some cases holding that the mere occupying of an office and assuming its duties for a long time, under certain conditions, being acquiesced in by the general public, and being recognized by the public as such officer—that this might constitute such person a de facto officer. But this rule cannot be applied to the case under consideration. Thomas cannot be said to be a de facto officer, when the only claim to the office is based upon the fact that he has assumed to act as such officer for about three months.

There are many cases cited by the learned counsel for the respective parties to this action, upon what constitutes and what does not constitute an officer de facto, that I have not commented upon, and there are many authorities bearing upon this proposition, but I fail to find any case where it has been held that an officer who receives his office from a

source that has no power to confer it is holding under any color of title; and it must follow that Thomas is not an officer de facto, and had no right or power to perform the duties of the office of water commissioner of the village of Canaseraga; that Fay, having been legally appointed to the office of water commissioner, and his term of office not having expired, is still the only de jure water commissioner of the village of Canaseraga, and he not having received any notice of the meeting at which this tax was laid, and having taken no part in the same, the acts of the water commissioners in laying this tax are void. All the water commissioners must either attend and take part in the deliberation of the water board in laying a tax, or must have notice of the meeting. Statutory Construction Law, § 19; Cummings & Gilbert's Rev. St. p. 3834.

As to the second point raised by the appellant—that the justice erred in rejecting evidence which would have shown that said assessment was made in part for the illegal purpose of raising money to pay the salary of one of their number—the facts are as follows: The defendant offered in evidence the report of the water commissioners made March 1, 1903, to the village board, of the money received and paid out by them during the preceding year; and in that report it appears that they had paid to J. A. Daley, one of the water commissioners, a salary of $50 for acting as superintendent of the board. There was nothing contained in the report that they contemplated paying Daley $50, or any other sum, as superintendent for the next ensuing year, and I think the rejection by the justice of the peace of this report as evidence was not such an error as would call for the reversal of the judgment.

In considering the last point raised by the appellant—as to the constitutionality of the law under which this assessment was made—it is well to consider what similar laws could be passed by the Legislature, and be held constitutional, if this law is not in violation of any constitutional rights. Suppose the Legislature should enact a law that each alternate property on a given street in a city or village should be taxed for the expense of building a sewer in the street upon which the property assessed was located, or that the property upon which the buildings bore odd street numbers should alone be assessed for this local improvement. Or, again, assume that the Legislature had said that all property upon which is situated a red building within 500 feet of a hydrant may be assessed for fire protection, or that only those people of a certain nationality owning property within prescribed limits should be assessed for fire protection. Suppose a law was passed providing that the expense of paving a street should be assessed only against the property that was owned by persons of a particular religious or political faith. Can a valid law be passed, that the expense of building a schoolhouse shall be assessed only against the property of those persons who have no children of school age? Why is not this law under consideration exactly along the same line, when it provides that only the property that does not take water from the village waterworks or from a waterworks corporation shall pay a tax for fire protection, and by its terms exempts all the other property from such tax, although it is receiving the same benefit? The whole mischief of this law, I assume, arises from the misap-

prehension of a fact, as I understand it.  For it is apparent that the Leg-
islature, in enacting this law, believed that, when a person procured
water from the waterworks for domestic or manufacturing purposes,
included in the price paid was what it would be worth for fire protec-
tion; and, if they were of that belief, they were mistaken.  For it is a
fact that, whenever a waterworks system is built in a village munici-
pality by individuals or a private corporation, they fix the water rent
for domestic and manufacturing purposes at what they believe is a fair
value, and for what the consumer can afford to pay, and whatever the
water may be worth to the municipality for fire protection is made a
subject of contract with the entire village.  And in the case of an in-
corporated water company the law expressly provides that:

"Every such corporation shall supply the authorities or any of the inhab-
itants of any city, town or village, through which the conduits or mains of
such corporation may pass, or wherever such corporation may have organ-
ized, with pure and wholesome water at reasonable rates and costs, and the
board of trustees of any incorporated village   *   *   *   shall have the power
to contract in the name and behalf of the municipal corporation of which
they are officers, for the term of one year or more, for the delivery by said
company to the village or city, of water through hydrants or otherwise, for
the extinguishment of fire."  Transportation Corporation Law, § 81 (3 Cum-
mings & Gilbert's Rev. St. p. 4247).

If a village construct its own waterworks, the calculation of results
is based upon what it will be able to receive by way of water rents col-
lected of users for domestic and manufacturing purposes, and the con-
tract is based on the value of the water for such purposes only, and the
benefit derived by the whole village from receiving fire protection from
the waterworks is considered; but no general tax under the law is con-
templated to pay for the benefit the village receives in the way of fire
protection, inasmuch as the whole village receives the benefit.  The
water rents charged for domestic and manufacturing purposes are not
a tax, in any sense of the word.  It is a pure and simple question of con-
tract between the seller and buyer, and the consumer is under no obli-
gation to take the water if he finds that the price is more than it is worth
to him for the purposes for which he is to use the same.  Silkman v.
Water Commissioners, 152 N. Y. 327, 46 N. E. 612, 37 L. R. A. 827.

Passing from the general reasoning of the question under consider-
ation, the case of Skaneateles Waterworks Company v. Village of Skan-
eateles, reported in 161 N. Y., at page 154, 55 N. E. 562, 46 L. R. A.
687, seems to be directly in point, in holding that the law under con-
sideration is unconstitutional, with the exception that since the decision
in that case the Legislature has amended the law under consideration
by inserting this clause, "or which does not take water from the water-
works corporation."  I am unable to see how this amendment brings
the law within the Constitution, if it was unconstitutional before.  Can
it be possible that an incorporated waterworks company has superior
right for the protection of its property than a partnership of individuals
or a single private person should have?  As the law stands to-day, there
is no protection to a partnership of individuals or a single person who
have or may construct waterworks in a municipality under franchises
duly granted from suffering the same loss of property that the Skane-
ateles Case sought to prevent, and which caused the court of last resort

in this state to hold the law to be unconstitutional. It will not do to say that, for the reason the same facts do not exist in the case at bar as in the Skaneateles Case, it is not an authority governing the case under consideration, for "the constitutional validity of law is to be tested, not by what has been done under it, but what may by its authority be done." Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289 (see opinion at page 188, 74 N. Y.); Gilman v. Tucker, 128 N. Y. 190, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464; Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302, 60 Am. St. Rep. 609 (see opinion at page 194, 153 N. Y., page 303, 47 N. E.).

In the Skaneateles Case, it is quite probable the court would have said more, and made their decision much broader, if it had been necessary to have done so to properly determine the question before them, but they did go far enough to decide that the law was unconstitutional, as it took property without due process of law. But it seems but reasonable to believe, if in the Skaneateles Case a copartnership of individuals or a single person had been the plaintiff, instead of a corporation, that the decision would have been the same. Suppose in the Skaneateles Case a private individual had been the plaintiff, who had property upon which valuable buildings were erected, and who had been to the expense of constructing works and bringing water upon it at a great cost in order to procure the water; that he was in need of no water from the waterworks either for domestic or manufacturing purposes or for the purpose of fire protection; that his own plant gave him ample protection against fire; that the board of water commissioners had assessed his property for fire protection, and exempted all other property under the law, because the owners were users of water from the village system for domestic purposes. In the light of its decision, would the court have held the law to be constitutional?

Section 220 of the village law provides:

"The board of water commissioners may contract in the name of the village with an individual or a corporation for supplying water to the village for extinguishing fires or for other public purposes."

Section 234 of the village law provides:

"If the mains are or shall be laid into or through a town, a water supply district thereof, another village, or a fire district in an incorporated village, the board of water commissioners may contract with the board of trustees of the village, or the fire commissioners of a fire district, respectively, to furnish water for the extinguishment of fires or for sanitary or other purposes."

So it will be seen from the above sections that a village has the power to make contracts for fire protection while they do not have water from an incorporated company for domestic or manufacturing purposes. Assuming that a village has established a water system of its own, which can be used only for domestic purposes, owing to the fact that the supply of water is not of sufficient elevation to give the necessary pressure to properly protect property against fire, and the village has a contract under either of the sections above quoted for water for fire protection alone, and which contract provides for the payment of $1,000 for water furnished for fire protection; can it be reasonably claimed that "a building and the lot upon which it stands, in or on which water from

the water works is not used, or which does not take water from the water works corporation, standing within five hundred feet of a hydrant," can alone be assessed to pay the contract price for fire protection for the whole village? This is precisely what may be done under the law in question if it is constitutional.

I have examined all the cases cited by the learned counsel for the respondent, but they fail to satisfy me that this law under consideration is constitutional. The case of People ex rel. v. Mayor, etc., of Brooklyn, 4 N. Y. 419, 55 Am. Dec. 266, cited by the respondent, I think, is an authority against the constitutionality of this law, for the court in its opinion says at page 430, 4 N. Y., 55 Am. Dec. 266:

"It is wrong that a few should be taxed for the benefit of the whole, and it is equally wrong that the whole should be taxed for the benefit of a few. No one town ought to be taxed exclusively for the payment of a county expense, and no county should be taxed for the expense incurred for the benefit of a single town. The same principle of justice requires that, where taxation for any local object benefits any portion of a city or town, that portion only should bear the burden."

In the Matter of the Trustees of Union College, 129 N. Y. 308, 29 N. E. 460, cited by the counsel for the respondent, is not an authority bearing upon the case under consideration; for, under the city charter, assessment for water rates was expressly made a tax.

If the village authorities or the board of water commissioners have, by a misapprehension of the law, charged more for water for domestic and manufacturing purposes than it is worth for that purpose alone, then they should reduce the amount charged; and, if there is a deficiency in paying the running expenses of the plant, the interest on the bonds, and the bonds as they become due, they have full power to, and should, raise the necessary money by a tax on all the village property. There is no doubt that a person residing upon a street through which a sewer is laid, whose property is already sewered, and does not need a street sewer at all, may be, and should be, taxed equally with the other residents on the street for the expense of building the sewer, or that a man whose property is amply protected against fire by his own private waterworks should be equally assessed for fire protection with his neighbors who have no fire protection of their own. The viciousness of this law is not in the fact that it assesses property that does not take water from the waterworks, situated within 500 feet of a hydrant, but is owing to the fact that it exempts all other property situate in the district, which receives a like and possibly a greater benefit than the property assessed.

The fourteenth amendment of the United States Constitution provides:

"No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law, or deny to any person within its jurisdiction the equal protection of the law."

I am of the opinion that the law under consideration is unconstitutional because it deprives a person of his property without due process of law. If the conclusions I have reached in this case are correct, the judgment should be reversed.

Judgment reversed, with costs.