In the Matter of the Application of the TRUSTEES OF UNION COLLEGE for an Order directing the TREASURER OF LONG ISLAND CITY to Cancel Certain Water-rates and Rents.

While the legislature may fix the aggregate amount of a local tax and the area of assessment upon which it shall be imposed, as in so doing it determines a public question upon considerations of public interest and welfare, it cannot provide for the apportionment of the tax among the persons assessed, without also providing for notice or a hearing on the part of the taxpayer, as thereby a personal liability and a lien upon his property are initiated in relation to which he has a right to be heard.

The legislature cannot validate an act, invalid because it provides for the apportionment of such a tax without notice, by simply re-enacting the act.

Water-rates imposed, pursuant to a city charter, upon lots within the municipal limits, are a tax assessed against the owners or occupants.

Accordingly *held*, that the provisions of the charter of Long Island City, in reference to its water supply (Tit. 10, chap. 461, Laws of 1871), which

provide for the apportionment and assessment of water-rates upon lots, without giving to the owners or occupants an opportunity for a hearing, were unconstitutional, and that assessments made under it were void.

Also *held*, that assessments made under said charter were not validated by the acts of 1882 (Chap. 383, Laws of 1882), or of 1886 (Chap. 656, Laws of 1886).

*Spencer* v. *Merchant* (125 U. S. 345), distinguished.

Upon appeal from an order in proceedings instituted under said act of 1886 (§ 10), to vacate an assessment, it was claimed that the remedy given by the act was inapplicable, as the alleged invalidity, *i. e.*, that an assessment could not be made upon vacant lots, did not appear upon the face of the proceedings. The assessment-rolls were not printed in the return. *Held*, that the objection was untenable; that as the form of the assessment-roll dictated by the charter would show, on its face, whether the rates were assessed against a village or a vacant lot, it was to be assumed that the fact appeared in the proper columns.

But *held*, that the assessment was equally void whether the lands were vacant or had buildings upon them; and that it was immaterial whether the water was used or not.

Also *held*, that the provision of said act of 1886 (§ 10), which requires any action or proceeding to test the validity or regularity of a tax, assessment or water-rate to be commenced within one year from the time of the delivery of the roll to the treasurer, is not retroactive, and so did not cut off the right to question a tax, where the time limited had expired prior to the passage of the act; that the limitation only applies to subsequent taxes and assessments.

(Argued November 30, 1891; decided December 22, 1891.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 9, 1889, which reversed an order of Special Term granting the application of the petitioner.

The nature of the proceedings and the facts, so far as material, are stated in the opinion.

*Eliphalet Nott Anable* for appellant. The revised charter of Long Island City (Chap. 461, Laws of 1871), in so far as it relates to the assessment of water-rates, and the several acts amending its provisions in relation to assessment of water-rates, are unconstitutional for failure to provide a hearing for the property owners, and the water-rates assessed thereunder are illegal and invalid. (Laws of 1871, chap. 461; *Stuart* v.

*Palmer*, 74 N. Y. 183; *Remsen* v. *Wheeler*, 105 id. 573.) The acts of the legislature (Chap. 383, Laws of 1882; chap. 656, Laws of 1886) in so far as they attempted to levy said water-rates are unconstitutional and void, because they contain no provision for a hearing of the property owners sought to be taxed by them. (Laws of 1882, chap. 383; Laws of 1886, chap. 656, § 15; *Ensign* v. *Barse*, 107 N. Y. 329; *Williams* v. *Bd. Suprs.*, 122 U. S. 154; Const. N. Y. art. 1, § 6; U. S. Const. art. 14, § 1; *Stuart* v. *Palmer*, 74 N. Y. 190; *Spencer* v. *Merchant*, 100 id. 585, 587; 125 U. S. 345; *People* v. *Turner*, 117 N. Y. 227; *Cromwell* v. *MacLean*, 123 id. 491; *McMillen* v. *Anderson*, 95 U. S. 37; *Davidson* v. *New Orleans*, 96 id. 97, 104; *Hager* v. *Reclamation District*, 111 id. 701; *Palmer* v. *McMahon*, 133 id. 600.) The acts under which the water-rates were assessed being void and unconstitutional, the invalidity of the water-rates should be conceded under section 10 of chapter 656 of the Laws of 1886. (Laws of 1871, chap. 461; Laws of 1875, chap. 415, § 1; Laws of 1879, chap. 100, § 4; Laws of 1881, chap. 684; *Stuart* v. *Palmer*, 74 N. Y. 188; Laws of 1886, chap. 656, § 10.) This proceeding is not barred by the limitation of the statutes. (Laws of 1882, chap. 383, § 11; Laws of 1886, chap. 656, §10; *Heckman* v. *Pinkney*, 81 N. Y. 211; *People* v. *Turner*, 117 id. 227; *Rexford* v. *Knight*, 11 id. 308.)

*George W. Stephens* for respondent  This proceeding is brought under a special statute. (Laws of 1886, chap. 656, § 10.) Except as to the water-rates for 1887, the proceeding was barred by the one year limitation. (Laws of 1882, chap. 383, § 11; *Guilotel* v. *Mayor, etc.*, 55 How. Pr. 114; *Tifft* v. *City of Buffalo*, 82 N. Y. 204; *Conkey* v. *Hart*, 14 id. 22; *Stocking* v. *Hunt*, 3 Den. 274; *Lennon* v. *Mayor, etc.*, 55 N. Y. 361; *Johnson* v. *A. & S. R. R. Co.*, 54 id. 416.) Ample authority existed for laying these water-rates, whether the lands were vacant or not. (Laws of 1875, chap. 415; Laws of 1879, chap. 100, § 4; Laws of 1881, chap. 684.) If the water-rates were originally invalid, the major part of them

have been validated by acts of the legislature. (Laws of 1882, chap. 383, § 1; Laws of 1886, chap. 656, § 15.)   The legislature had lawful authority to relevy such water-rates. (*In re Van Antwerp*, 56 N. Y. 261; *Spencer* v. *Merchant*, 100 id. 585; 125 U. S. 345; *Mills* v. *Carleton*, 29 Wis. 400; *Chattanooga* v. *N., C. & S. L. R. Co.*, 7 La. 561; *C. S. R. Co.* v. *Guenther*, 19 Fed. Rep. 395; Cooley on Taxn. 212; *Lang* v. *Kiendi*, 27 Hun, 66; *City of Chester* v. *Block*, 6 Law Rep. Ann. 802; *Stebbins* v. *Kay*, 51 Hun, 589; *In re Lamb*, Id. 643.

FINCH, J.   The petitioner instituted this proceeding to procure the cancellation of certain assessments upon his property in Long Island city, known as water-rents or lot-rates, upon the ground that the enactment by virtue of which they were imposed was unconstitutional.   The city charter, as it stood in 1871 (Chap. 461, title 10), created a board of water commissioners, empowered to supply the city with water, using for that purpose proceeds of bonds authorized to be issued, and at liberty to lay the pipes through any of the streets of the city.   The bonds represented the water debt of the city, and the commissioners were directed to establish a scale of water-rents to be charged against and paid by the owner or occupant of all buildings situated on lots adjoining any street through which the distributing pipes should be laid; such rents to be paid annually in advance, and apportioned with reference to the character and location of the buildings.   It was further provided that the aggregate of such water-rents should be at least equal to the accruing interest upon the water debt.   For the collection of these rents the commissioners were required to make an "assessment-roll for said city," placing in one column the name of the owner or occupant of any building or vacant lot chargeable with water-rent; in a second column the number of the building or lot; and in the third the amount of water-rent assessed upon such building or lot.   The commissioners were then to file such roll in the office of their clerk, publish notice of that fact in one or more newspapers of the

city, and deliver the roll with their warrant attached to the collecting officer. No hearing or opportunity for a hearing was allowed to the owners or occupants assessed, and their only privilege was to pay. The body of this act did not, in terms, assess vacant lots, although the prescribed form of the rolls assumed their liability. That difficulty was remedied by later amendments. (Laws of 1875, chap. 415 ; Laws of 1879, chap. 100, § 4 ; Laws of 1881, chap. 684.) These imposed the water-rents upon vacant lots as well as upon those occupied by buildings, and irrespective of the question whether the water was used or not. It is quite plain that these water-rates were taxes assessed against the owner or occupants. The area of assessment was the line of distributing pipes assumed to have benefited the adjoining property, and the aggregate to be raised at least the interest upon the water debt. The apportionment among the taxpayers was, by the act of 1875, to be in proportion to the areas of the respective lots, and not to exceed one-fifth nor to be less than one-tenth of one per cent per square foot of such areas. No taxpayer was in any manner allowed to be heard either as to that arbitrary basis of apportionment which took no account of values, or even as to its determination within the boundaries of the commissioners' discretion. These provisions are almost identical with those contained in the Brooklyn acts which came under discussion in *Remsen* v. *Wheeler* (105 N. Y. 573), and were held to be invalid for their violation of the constitutional right of the individuals assessed to notice and a hearing. The original assessments in the present case were invalid for the same reason.

Two efforts were subsequently made to restore their vitality. By chapter 383 of the Laws of 1882, it was enacted that these taxes imposed previous to 1880 should, so far as unpaid, be charged and assessed as originally made, the statute adding " the true intent and meaning of this act being to make such taxes in all respects legal and valid, and the same are hereby in all respects so confirmed and levied." The theory of the act seems to have been that an unconstitutional law can be validated by

simply repeating it, and that the vice of an assessment without a hearing is no worse than some formal omission which may be excused because it was not originally essential. The act of 1882, therefore, does not change the situation.

The act of 1886 (Chap. 656) again attempts to ratify and confirm the unconstitutional assessments without curing their inherent defect; and both acts are now sought to be sustained upon the doctrine of *Spencer* v. *Merchant* (100 N. Y. 585, and 125 U. S. 345) as a direct assessment by the legislative authority. That case held that the legislature might fix the aggregate amount of tax to be raised and the area of assessment upon which it should be imposed, but carefully avoided any ruling that the apportionment of the tax among the persons assessed, which fixes the amounts of the several liabilities, and establishes a charge for which the property is held and may be taken, can also be accomplished, without notice or a hearing on the part of the taxpayer. Indeed, the opinions of both courts assume such notice as a necessity, and the reasons therefor are clear and obvious. In fixing the aggregate sum to be raised and the area of property which shall pay it, the legislature determines a public question, and upon considerations of the public interest and welfare. The specific rights of any particular individual are not involved, and until they are, he has no right to interfere, except in the general way which is common to every citizen. But when the public questions are settled and the tax comes to be apportioned, a personal liability of the individual and a lien upon his property are initiated, and he has a right then to be heard upon all the questions which affect and determine that liability. His right is to pay no more than his just proportion, and the legislature cannot arbitrarily determine the amount, refusing to the person assessed a reasonable opportunity to be heard. Both of the validating acts are open to this objection. While they were sufficient to cure defects of one character, they were not capable of infusing life into a law which the legislature had no power to make.

The water-rates, therefore, which the petitioner sought to

cancel were void and illegal, and he was entitled to the relief sought, unless he selected the wrong remedy or delayed until it was too late. These objections remain to be considered.

The act of 1886 provides (§ 10) that "where the invalidity or irregularity of any tax or assessment, or water-rates or rents, appears upon the face of the proceedings, any party in interest may apply by petition to any court of competent jurisdiction for an order canceling the same." It is urged that this remedy which the petitioner has invoked, is inapplicable, because it may be that the lots were not vacant, and the contrary does not appear upon the face of the proceedings. The assessment-rolls are not printed in the return. Their form, as dictated by the charter, would show on the face of the roll whether the rates were assessed against a building or a vacant lot, and we must assume that the fact appeared in the proper column. The petitioner's affidavit asserts that all the lots were vacant and his assertion is not effectually denied. The fact itself, with the forms prescribed by the charter, justify the assumption that the character of the property appeared according to the truth. But I am also of opinion that whether the lands were vacant or had buildings upon them, and even whether the water was used or not, are totally immaterial so long as the rolls imposed a tax. That they merely registered a voluntary contract for the use of the water is totally inconsistent with their character as assessments imposed by a taxing power and wholly independent of the citizen's consent.

But it is further claimed that the proceeding instituted by the petitioner is barred by his delay. The provisions of the act of 1882 did not in any manner cut off his rights. By section 11 of that act any proceeding to test the validity of *a sale*, or any defense to any action or proceeding founded on the tax, must show an assault upon it within one year after the passage of that act. But there has been no sale and no proceeding to enforce a sale which made necessary the defense referred to. Section 18 of the same act relates only to irregularities in the levy resulting from the acts or omissions of city officers or departments. I see nothing in the act which

barred the right of the petitioner to sue for a cancellation of the assessment or resist the seizure of his property, if that should happen before a sale. But it is section 10 of the act of 1886 which is specially cited on behalf of the city. That provides that " any action or proceeding by any person or corporation to test the validity or regularity of any tax levied or assessment or water-rates or rents made shall be commenced within one year from the time of the delivery of the roll in which said tax or assessment or water-rates are contained to the said treasurer." No rule of statutory construction authorizes us to treat this provision as retroactive, and intended to operate upon and destroy existing rights. To ratify in form an unconstitutional act and then by retrospective legislation cut off all power of resistance is a measure neither tolerable nor possible. Many years had already elapsed when the act of 1886 was passed since the delivery of the rolls to the treasurer, so that the construction asserted would take away all remedies existing and applicable. No such construction is admissible, and to adopt it would make the remedy by petition given in the same section a mere mockery. The limitation is applicable only to subsequent taxes and assessments. I think, therefore, that the Special Term was right and the General Term wrong.

The order of the General Term should be reversed and that of the Special Term affirmed, with costs.

All concur.

Ordered accordingly.