## Williams *v.* Samuel et al.

266

Argued November 28, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles E. Kenworthey,* with him *Paul Maloney,* for plaintiff.

*Robert von Moschzisker* and *Joseph Sharfsin,* City Solicitor, with them *Herman N. Schwartz* and *Ernest Lowengrund,* Assistant City Solicitors, for defendants.

OPINION BY MR. JUSTICE MAXEY, December 5, 1938:

Plaintiff is a taxpayer of the City of Philadelphia and the owner of two of its bonds. Defendants are (1) the members of the Philadelphia Authority (hereinafter referred to as the Authority), a corporation organized un-

der the "Municipality Authorities Act" of June 28, 1935, P. L. 463, as amended, and (2) the Mayor and the Director of Public Works of the City of Philadelphia.

This action was brought by the plaintiff to enjoin defendants from carrying out a plan whereby the City of Philadelphia will transfer to the Authority its sewer and water properties and then lease them back from the Authority at rentals sufficient to pay off, over a period of time, the principal and interest of any bonds which may be issued by the Authority to raise funds with which to improve the properties.

The properties involved are the water supply system and the sewer system of the City; the former was built and improved over a period of years at a cost in excess of $80,000,000, and the latter, at a cost of over $90,000,000. A large portion of the funds invested in these properties was raised by the sale of bonds; in the case of the water system the amount so raised was $44,-985,000 and in the case of the sewer system the amount was $40,409,838. A large part of the cost of the sewer system was also raised by assessments against adjacent property owners. The City at present does not make any charge for the use of the sewer system. However, it does make a charge for water supply. For the years 1930 to 1937, inclusive, the average annual gross revenue from the water supply system was $6,715,124.91, the average annual operating expenses were $2,506,332.70, the average annual earnings in excess of operating expenses were $4,208,792.21. The average payment of interest and Sinking Fund charges on the water debt was $1,538,934, leaving an average annual net revenue of $2,669,858.21. For 1937 the net revenue was approximately $3,500,000.

The authorized and outstanding indebtedness of the City of Philadelphia, after all deduction allowable by law, has reached the debt limit fixed for the City by the State Constitution. The City's borrowing power is therefore at this time exhausted.

The Authority was incorporated on September 20, 1938, and has made application to the Federal Emergency Administration of Public Works for grants under the provisions of the United States statute of June 16, 1933, C. 90 (National Industrial Recovery Act) 48 Stat. 200 et seq.; U S C A 40, sec. 401 et seq., the amendments, supplements and extensions thereof, for thirteen different projects, for the purpose of improving and extending both the water supply and sewer systems. The contemplated improvements and extensions will cost approximately $60,000,000; $20,000,000 of which is to be spent on the water system and $40,000,000 on the sewer system. The grants applied for are for 45% of the total amount, i. e., $27,000,000. The balance of $33,000,000 is to be supplied by the Authority and to be secured by it by a loan evidenced by the bonds of the Authority.

At the Authority's request, the City adopted resolutions on October 20, 1938, declaring its purpose to execute a contract with the Authority, under the terms of which the City will transfer to the Authority the water supply system and the sewer system, for the improvements and extensions of these systems by the Authority and for the lease of these systems by the Authority to the City for thirty years, on an annual rental basis sufficient to pay, over a twenty-nine-year period, the interest charges and to pay off the principal of the Authority's bonds in full, plus 10% to be paid into a reserve fund to be maintained at one-fifteenth of the total amount of bonds outstanding, plus an amount sufficient to pay the Authority's expenses. The City is to retain possession of the systems, to maintain and operate the same, to receive all revenues derived from consumers or users of such facilities and to pay the aforesaid rental and all operating and maintenance costs.

Plaintiff complains that the proposed contract contains "no provision for the conveyance back of the property or of the extensions and improvements, to the City." Defendants say: "At the end of the lease period, title

and ownership of the property will be in the Authority unless, by operation of law or by the exercise of the City of rights under the law, some other result is effected." Section 14 of the "Municipality Authorities Act" of 1935, supra, as amended by the Act of May 20, 1937, P. L. 739, provides: "When any Authority shall have finally paid and discharged all bonds which, together with the interest due thereon, shall have been secured by a pledge of any of the revenues or receipts of a project, it may (subject to any agreements concerning the operation or disposition of such project) convey such project to the municipality." This section also provides that when the Authority shall have paid all its debts "it may convey all its property to the municipality and terminate its existence," and that when the Authority files a certificate of termination, if the certificate is approved by the municipality creating the Authority, the same shall be recorded in the office of the recorder of deeds of the county and "thereupon the property of the Authority shall pass to the municipality . . . and the Authority shall cease to exist." Amended section 18 of the Act provides: "If a project shall have been established under this act by a board appointed by a municipality or municipalities, which project is of a character which the municipality or municipalities have power to establish, maintain, or operate, and such municipality or municipalities desire to acquire the same, it or they may by appropriate resolution or ordinance, adopted by the proper Authorities, signify its or their desire to do so, and thereupon the Authorities shall convey by appropriate instrument said project to such municipality, or municipalities, upon the assumption by the latter of all the obligations incurred by the Authorities with respect to that project." This section makes it clear that the City of Philadelphia may secure the reconveyance to itself of the projects now under review upon its desire so to do, followed by appropriate action and the assumption of the projects' obligations.

It is also clear that this proposed project is a self-liquidating one, for the rental to be paid by the City to the Authority, under the proposed contract of lease, will approximate $1,950,000 a year and will be sufficient to enable the Authority to meet its administration costs and all charges on the debt incurred by it. The City intends to impose a charge on the users of its sewer facilities. The proposed agreement between the Authority and the City provides, inter alia, as follows: "The City shall charge and collect water rentals from the consumers of water and may also charge and collect sewer rentals or charges from the users of the sewers. The total of the rentals . . . for water and for sewers . . . will be sufficient to pay the operating and maintenance costs of the water supply works and system and the sewers . . . [each year] and 133⅓ per cent of the rental payable under the terms of the lease in that year." It is understood that the City *will* impose an adequate charge for sewerage service. This charge, together with the charge for water, will make the project self-liquidating. Since it is self-liquidating, it will add nothing to the City's indebtedness.

Plaintiff in his bill avers, inter alia, the following: The City is without current revenues or funds available for such rental, and it has had deficits during each of the past five years that now total approximately $38,493,000; that its estimated revenues will not be sufficient to meet its estimated expenses for the fiscal year 1939; and that if the proposed contract is entered into the obligation to pay the rental reserved thereunder would result in an increase of the indebtedness of the City. "The improvements and additions to the water and sewer systems are to be made over a period of time in the future, and, since the City now owns and operates the systems without cost to it, except for the actual operating costs, it will not presently receive any benefit from the contract . . . and it will not for a considerable period in the future, and may never, receive benefits commensurate with the

annual consideration it will be compelled to pay." Plaintiff further avers that the "Municipality Authorities Act," supra, and the proposed contract are unconstitutional and quotes several sections of the Pennsylvania Constitution which he alleges they violate; that in conveying both the water and sewer systems the City is doing so in its proprietary or private capacity, rather than in its governmental capacity; "that the legislature is not empowered to authorize a municipality to convey, without consideration or with a nominal consideration, to an Authority, property owned by it in its proprietary capacity, as distinguished from property owned by it in its governmental capacity"; that the "Municipality Authorities Act" does not "authorize the conveyance of the water supply system to the Authority"; that the City in conveying these systems is parting with a valuable asset, the water system being a producer of revenue and the sewer system a potential income producer, and that their conveyance would therefore be in derogation of the rights of the taxpayers and the holders of City bonds and would diminish the security for these bonds; that the conveyance of the sewer system would also be in derogation of the rights of abutting landowners and users of the sewers who were assessed part of the cost of construction thereof; and that the conveyance, without consideration or for a nominal consideration, is in violation of the Act of May 16, 1929, P. L. 1773, as amended by the Act of May 28, 1937, P. L. 1010, requiring that where the City sells a capital asset, the funds received from such sale shall be deposited in the sinking funds for the redemption of any bonds that were sold and the proceeds of which were used to pay for said property, and which remain unpaid at the time of the sale of said property."

Plaintiff therefore prays that an injunction be issued enjoining defendants from (1) "carrying into effect the provisions of the Municipality Authorities Act," supra, (2) "entering into the proposed contract . . . for the

transfer of the property . . . or obligating the City to pay any rental . . . for the use of the property," (3) "making, constructing and erecting any public works or improvements whatsoever," and (4) "executing and delivering any bonds or other evidences of indebtedness, and any trust indenture or other instrument purporting to secure any such bonds or evidences of indebtedness," and that the Municipality Authorities Act, supra, as amended, be declared unconstitutional.

In passing upon the constitutionality of acts of assembly this court neither commends nor questions the wisdom of the acts it judges. Its concern is with legislative power and not with legislative policy. In determining whether a measure is one which the legislature had the power to enact into law, this court starts with the presumption in favor of its validity. This rule this court has steadily adhered to since the foundation of the Commonwealth. If it is clear that the statute challenged breaches the Constitution of nation or state, it is our duty to say so. But when it is not clear that the statute challenged conflicts with the Constitution, it is our duty to uphold it.

The challenge that the Authorities Act contravenes Article I, section 17, of the Constitution of Pennsylvania, in that it makes an irrevocable grant of special privileges, we overrule. The pledge in the Act, to "not limit or alter the rights hereby vested in the Authority until all bonds at any time issued, together with the interest thereon, are fully met and discharged," is not an irrevocable one, for it ends when the obligations assumed by the Authority are fully discharged. See *Kelley v. Earle*, 320 Pa. 449, 182 A. 501.

The challenge that the Act contravenes Article II, section 1, of our State Constitution, in that it creates a delegation of legislative power, we overrule. Powers similar to those granted under this Act were granted in the Second Class County Authorities Act and they were held not to be in contravention of the above section of

274

the Constitution. See *Tranter v. Allegheny County Authority*, 316 Pa. 65, 173 A. 289; *Kelley v. Earle*, 325 Pa. 337 (2nd case), 190 A. 140; and *Dornan v. Phila. Housing Authority*, 331 Pa. 209, 200 A. 834.

The challenge that the Act contravenes Article III, section 7, of our State Constitution, in that it is a local or special law regulating the affairs of a city, creating a corporation and granting powers and privileges in a case where such powers have been provided for by general law, we overrule. This same challenge was made in the Second Class County Authorities Act and the General State Authorities Act and in each case this court found the challenges not well taken. See cases cited in the preceding paragraph.

The challenge that the Act contravenes Article III, section 20, of our State Constitution, in that it "delegates to a special commission, private corporation or association, power to make, supervise or interfere with any municipal improvement, money, property or effects," we overrule. The same challenge was made in the cases just cited and was not sustained. The decisions there are controlling here. In the *Tranter Case* (supra) this court declared: "It cannot be said that the creation of a public corporation as a state agency to take over public highways for the limited purpose of improving them, paying for the improvement out of revenues collected for their use, and then returning them to the local political subdivisions to which they had formerly been entrusted by the state, is a special commission, in any sense in which those words were used in the constitution, either in substance or spirit."

The challenge that the exemption of the bonds and property of the Authority from taxation, contravenes Sections 1, 2 and 3 of Article IX of our State Constitution, is overruled on the authority of the second *Kelley v. Earle Case*, 325 Pa. 337, 190 A. 140, in which it was held that the legislature may exempt from taxation the

bonds of governmental instrumentalities. See also *Dornan v. Phila. Housing Authority* (supra).

The challenge that the Act contravenes Article IX, section 7, of our State Constitution, in that the proposed contract makes the City a "stockholder" in the Authority and results in "a loan of the City's credit" to the Authority, is overruled. The same challenge under a similar state of facts was made in the *Tranter Case* (supra) and was found by this court to be without merit.

The challenge that the Act and the contracts proposed to be entered into pursuant to it violate Article IX, section 8, of our State Constitution which prescribes the debt limits and the methods of incurring debt by a municipality and the challenge that Article IX, section 10, of our State Constitution requiring the imposition of an annual tax sufficient to pay the debt charges at the time of incurring the debt is also violated, are both overruled. Section 4 of the Municipality Authorities Act contains the following provision: ". . . the Authority shall have no power at any time or in any manner to pledge the credit or taxing power of the Commonwealth of Pennsylvania or any political subdivisions, nor shall any of its obligations be deemed to be obligations of the Commonwealth of Pennsylvania or of any of its political subdivisions, nor shall the Commonwealth of Pennsylvania, or any political subdivision thereof, be liable for the payment of principal of or interest on such obligations." This language is the same as that used in section 4 of the General State Authorities Act and substantially similar language is used in section 501 of the Second Class County Authorities Act. As these acts were upheld in the *Tranter Case* (supra) and the second *Kelley v. Earle Case* (supra), the decisions in these cases are decisive of the question posed in this paragraph.

It is contended by the plaintiff that the execution of the contract of lease for a term of thirty years and the agreement to pay the stipulated rent will result in an increase of the indebtedness of the City, which indebted-

ness has already reached the constitutional limit. The answer to that is, as we have already pointed out, that the rental to be paid by the City to the Authority from water and sewer rentals will be sufficient to meet the Authority's administration costs and all the charges of the debt incurred, and therefore there will be no increase in the City's indebtedness. Under the contract between the City and the Authority, sewer and water receipts are to be pledged to the extent necessary to assure payment of the rent agreed to be paid by the City to the Authority.

Plaintiff further contends that "if the Authorities Act could be construed to authorize the transfer to the Authority of existing water works, it violates sections 1 and 9 of Article I of the State Constitution and section 1 of the Fourteenth Amendment of the Federal Constitution. Section 1 of the former contains a statement of the inherent rights of man as to the acquisition of property, etc. Section 9 is a prohibition against deprivation of a man's "life, liberty or property, unless by the judgment of his peers or the law of the land." Section 1 of the 14th Amendment of the Federal Constitution is the well-known "due process" clause. The argument of plaintiff is that the water supply system is owned by the City in its proprietary capacity and that supplying water is not a governmental function, that "the State has no special power over the property held by the City in its proprietary capacity" and that therefore any attempted alienation of this property by the municipal authorities is a taking of the people's property without due process of law. Defendants concede that the City's ownership of the water works is proprietary. In *Shirk v. Lancaster City*, 313 Pa. 158, 169 A. 557, this court held that the "property employed by a municipality in furnishing water to its inhabitants is not used for governmental purposes, and in its ownership and operation the municipality acts in its proprietary character." The Act of March 11, 1789, 2 Sm. L. 463, provides expressly that the City may "grant, bargain, sell, alien and con-

vey, mortgage, pledge, charge and encumber or demise and dispose of" at its will and pleasure all types of property there enumerated. This court declared in *Baily v. Phila.*, 184 Pa. 594, 39 A. 494: ". . . the right of alienation is given in express words in the charter of 1789, all the powers granted in which were preserved by the consolidation act (Act of February 2, 1854, sec. 6, P. L. 25) and which appears to be still in force: *Com. v. Walton*, 182 Pa. 373 [38 A. 790]. And the right is not taken away by the Act of 1885 [the Bullitt Bill] which, as already said, merely regulates the mode of exercise of executive, and incidentally of legislative, functions without changing the rights which appertain to those functions." The state can authorize its creature, the City, to transfer its sewer system to the Authority created by the state. This Authority was created for the improvement of property which ministers to the public welfare. It exercises its functions through a Board selected by the legislative body of the city. Sections 14 and 18 of the Authorities Act limit the title of the Authority in the property to be conveyed to it and section 6 of the Act protects the property conveyed to the Authority against sale, assignment, mortgage or other disposition by any receiver who may be appointed after default in the payment of principal or interest on any of the Authority bonds and who may, pursuant to order of court, take possession of the facilities of the Authority, or any part or parts thereof, the revenues or receipts from which are or may be applicable to the payment of the bonds so in default, and operate and maintain the same and collect and receive all rentals and other revenues thereafter arising therefrom in the same manner as the Authority or the board might do.

At the argument plaintiff's counsel stressed the fact that a large part of the city's bonded indebtedness was incurred by the sale of bonds whose proceeds were invested in a water supply system and a sewer system. Plaintiff says in his paper book: "It is true that there

is no specific lien provided for in the bonds sold to plaintiff on either the properties or revenues. There is, however, a specific representation that a portion of the proceeds are to be used in the construction and improvement of the two systems involved. It was on this basis plaintiff, or his predecessor in title, loaned his money. The proposed transfer of the properties and pledge of the revenues to the Authority deprive plaintiff of a very substantial asset which he had a right to assume would be retained for the protection of his investment. For this additional reason, we submit that the proposed plan is invalid."

Plaintiff also calls attention to the Act of May 16, 1929, P. L. 1773, as amended by the Act of May 28, 1937, P. L. 1010, (53 PS 1992) which provides that when a municipality has been duly authorized, pursuant to the Act of April 20, 1874, P. L. 65, and the amendments thereto, "to increase its indebtedness to an amount exceeding two (2) per centum of the last preceding assessed valuation of the taxable property therein, with the assent of the electors thereof, and the corporate authorities, having acquired by fee simple any property by use of said funds, and the corporate authorities shall deem it for public interest to abandon the use of said property for the purpose as purchased, either in whole or in part, and, by either ordinance or resolution, shall so provide, then the said corporate authorities shall be and are hereby authorized to dispose of said property so acquired; and the funds so received from said properties shall be deposited in the funds of said public corporation, for the redemption of any bonds that were sold and used to pay for said property, remaining unpaid at the time of the sale of said property, *or of any outstanding bonds issued and used to refund bonds so sold and used.*"

It is obvious that, as plaintiff concedes, "there is no specific lien provided for in the bonds sold to plaintiff on either the properties or revenues," plaintiff is in no

position, either as a bondholder or as a taxpayer, to challenge the city's proposed action in respect to its water and sewer systems. A holder of bonds such as those held by the plaintiff has as his security the city's credit and solvency and these rest on the valuation of the properties which are subject to taxation in the city and on the power the law gives a bondholder to compel the city to levy and collect taxes to discharge the city's contractual obligations as expressed in its bonds. Article IX, section 8, of the Constitution requires any municipality incurring any indebtedness to provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years. The City ordinances have complied with these requirements. The revenues to be derived from the city's water system and to be derived from the sewer system (for the City Solicitor states in his brief: "Sewer charges will be imposed at rates and in amounts in excess of the requirements for the rental from the City to the Authority on that property"), will not be diverted to any private or improper use but will be used to defray the cost of constructing and maintaining at a high degree of efficiency improved water and sewer systems, which systems are most vital to the health and well-being of the 2,000,000 inhabitants of Philadelphia. The expenditures to be made are not for municipal luxuries but for municipal necessities. The State Sanitary Water Board has heretofore made formal demand on the City of Philadelphia to provide for a complete system of sewage treatment and disposal and has ordered it to desist from discharging any untreated sewage into the Delaware and Schuylkill Rivers and has threatened to take legal action to force the accomplishment of these ends under the provisions of the Act of June 22, 1937, P. L. 1987. In the brief filed in this court by the Interstate Commission on the Delaware River Basin, appears this statement: "We have too long neglected caring for the wastes which arise as the result of a dense population and a great industrial develop-

280

ment. Now that ways and means of overcoming the financial difficulties have been found, there should no longer be delay in prosecuting these public works which mean so much to the future prosperity of the people inhabiting the Delaware River Basin." Through the instrumentality of the City Authority, the taxpayers, instead of being compelled to pay 100% of the financial burden entailed, are relieved of 45% of it through a contribution of $27,000,000 from the Federal treasury, or in whatever amount the grant may be made. The assumption of a 55% burden thus gives rise to a *100%* benefit. A city without an adequate water system and an efficient sanitary sewer system suffers in civic prestige and places the lives and health of its citizens in jeopardy. All of a city's inhabitants are its taxpayers, either directly or indirectly. Whatever benefits the former, benefits the latter. When taxpayers are benefited, bondholders have cause for rejoicing rather than for complaint.

The laws and the municipal actions pursuant to them, all of which bring these self-liquidating projects into being, do not trench upon any provision of either the State or the Federal Constitution. All challenges made to their validity are overruled.

We are unanimously of the opinion that the Municipality Authorities Act of June 28, 1935, P. L. 463, as amended by the Act of May 20, 1937, P. L. 739, as it relates to the Philadelphia Authority of the City of Philadelphia and providing, as the proposed contract does, for self-liquidating projects, is constitutional.

The City Solicitor having stated in open court that a rental charge would be made for sewers sufficient to make the sewer projects self-liquidating, and also to avoid requiring any contribution out of the general tax levy, the judgment of this court is rendered on the express condition that such sewer rental shall be established and collected, and further that such sewer rental, together with all water receipts, shall nevertheless be

used by the City in its budget as factors in estimating its gross current revenue.

The bill is dismissed, costs to be paid by the Authority.