Hamilton's Appeal.

18

Argued October 1, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*John M. Smith, Jr.,* with him *Seth W. Watson,* for appellant.

*Herman N. Schwartz,* with him *John P. Berry* and *Ernest Lowengrund,* Assistant City Solicitors, and *Francis F. Burch,* City Solicitor, for appellee.

*A. Evans Kephart* and *Robert T. McCracken,* for appellee, under Rule 61.

*John V. Diggins,* for amicus curiae, appellee.

OPINION BY MR. JUSTICE PATTERSON, October 28, 1940:

This is a taxpayer's appeal from a decree determining that outstanding indebtedness of the City of Philadelphia, in the sum of $59,156,500, invested in the City's sewer system and facilities for the treatment and disposal of sewage, and the further sum or sums, not to exceed $42,000,000, now proposed to be borrowed and invested in said system and facilities and for the improvement and extension thereof, is self-liquidating utility debt within the meaning of Article IX, Section 8, of the State Constitution, and, pursuant to the provisions of the enabling Act of May 21, 1921, P. L. 1054, directing that such outstanding and proposed sewer indebtedness be wholly excluded in ascertaining the City's borrowing capacity.

By a duly enacted ordinance, approved August 1, 1940, the City of Philadelphia imposed a charge "upon each lot or parcel of land, building or premises having any connection with or being available for connection with the sewer system of the City or otherwise discharging sewage, industrial waste, water or other liquids or substances, either directly or indirectly, into the said sewer system . . . at a rate equal to forty (40) cents for each one hundred (100) dollars of assessed valuation of such lot or parcel of land, building or premises," with a proviso that the rate for charitable institutions and public and private schools shall be ten cents for each

one hundred dollars of assessed valuation. The charge thus provided for is designated "sewer rental" and is purportedly imposed pursuant to the provisions of the Act of July 18, 1935, P. L. 1286, as amended by the Act of May 14, 1937, P. L. 630, hereinafter referred to as the "Sewer Rental Act," whereby municipalities are empowered to provide for the imposition and collection "of an annual rental or charge *for the use*" of sewer facilities, said annual rental to be "apportioned equitably among the properties *served*" and to be a lien on such properties. That the charge imposed by the ordinance is reasonably calculated to yield revenue in excess of operating expenses sufficient to pay the interest and sinking fund charges on both the outstanding and the proposed sewer indebtedness is not questioned. Appellant-taxpayer's position, broadly stated, is that the charge sought to be imposed by the City is not, in reality, a rent, but rather a tax, levied in violation of our constitutional requirement of uniformity of taxation, and further that the revenue derived thereby will not support an exclusion of the City's outstanding and proposed sewer indebtedness under Article IX, Sec. 8, of the Constitution. The contention of the City, sustained by the court below, is that the charges in question are not taxes, but rentals, authorized to be imposed by the Sewer Rental Act, and sufficient, both in character and amount, to sustain the exclusion.

Sewers, like water systems, are owned and operated by municipalities in their proprietary capacity, not governmentally: *Williams v. Samuel,* 332 Pa. 265; *Gemmill v. Calder,* 332 Pa. 281, 283; *Graham v. Philadelphia,* 334 Pa. 513, 519. "The construction, operation, or maintenance of sewer systems, water systems and gas systems by a municipal corporation is in the nature of a private enterprise. A municipality is not required to construct, own, or operate such public utilities. It may contract with private corporations or individuals to furnish such service, or it may, if it so elects, own and op-

erate such utilities for the benefit and convenience of its inhabitants and property owners.": *Lighton v. Abington Twp.*, 336 Pa. 345, 357. In the ownership and operation of such facilities, the municipality stands on the same footing as a private corporation and is entitled to the same privilege of receiving payment for the service rendered: *Jolly v. Monaco Borough*, 216 Pa. 345, 349. The right of the City of Philadelphia to receive such payments for the use of its sewer facilities was expressly recognized in *Williams v. Samuel*, supra, at 271. These charges are not taxes, nor a substitute for taxes, but charges made, without discrimination, for an industrial service rendered in value equal to the respective sums charged; by using the facilities with knowledge of the rates charged, the consumer, by implication, contracts and agrees to pay the rates, and his obligation to make payment rests upon contract rather than upon any exercise of the taxing power. See *Fisher v. Harrisburg*, 2 Grant 291, 296; *Kilcullen v. Webster*, 260 Pa. 263, 267; *Jolly v. Monaco Borough*, supra, 348-9, 350; *Rieker v. Lancaster*, 7 Pa. Superior Ct. 149, 156; *Silkman v. Board of Water Comrs.*, 152 N. Y. 327, 46 N. E. 612. They are "simply charges for a commodity sold as any others sell commodities.": *Shirk v. City of Lancaster*, 313 Pa. 158, 173. There is, however, a clear distinction to be drawn between rents paid for *actual use* of municipally-owned utility facilities and charges such as the City here seeks to impose.

The Sewer Rental Act, relied upon as authorizing the charge imposed, provides merely, as indicated in its title, for the charging and collection of "annual rentals *for the use of* sewers, sewage systems, and sewage treatment works," and specifically provides, in section 2, that the charge "shall be apportioned equitably *among the properties served* by the said sewer, sewage system or sewage treatment works." As the court below stated, by the ordinance of 1940, "the City is requiring payment to be made not only by those who have availed themselves

of the right to connect with the sewer but by all those to whom it is made available by its presence." By the terms of the ordinance the charge is made applicable not only to properties actually connected with and accommodated by the sewer system, but as well, inter alia, to (1) vacant lots not connected to the sewer system but abutting thereon, (2) vacant lots connected to the sewer system but not using it, (3) vacant buildings not connected with the sewer system but abutting on it, (4) vacant buildings connected with the sewer system but not actually using it, (5) occupied buildings not connected to the sewer system but abutting thereon, and (6) as construed by the court below, to all properties directly or indirectly discharging surface water into the storm sewer system, regardless of whether they are connected with or are available for connection with the sanitary sewer system.

Having due regard for the ordinary meaning of the unambiguous language used in the Act, it would appear to apply solely to charges based upon actual user of the sewer system, and further would seem to require that the charge be reasonably proportional to the value of the service rendered, and not in excess of it; so construing the Act, we think it furnishes no authority for the ordinance in question. Cf. *Allentown v. Henry,* 73 Pa. 404. There an act of assembly authorized the levy of assessments, by the City of Allentown, "in the nature of water rents," upon "every dwelling-house situated in any of the streets, lanes and alleys of the said city, in, through and along which, and as far as the water-pipes . . . are now laid, and shall hereafter be laid." This Court, speaking through Mr. Justice MERCUR, held an ordinance laying a "tax" upon dwelling-houses "not supplied with hydrants" unauthorized by the act and invalid, saying: "This is an unwarranted departure from the letter and spirit of the law." See also *City of Allentown v. Helfrich,* 1 W. N. C. 350. If the language of the Act can properly be construed as authorizing the

imposition of charges except in proportion to the extent of the user, and, a fortiori, if it can be construed as authorizing the imposition of charges irrespective of any use, it is doubtful whether there is a sufficient expression of legislative intent to confine the charge within constitutional limits. See *Carson v. Sewerage Comrs. of Brockton,* 175 Mass. 242, 56 N. E. 1, aff'd 182 U. S. 398.

While we are fully cognizant of the practical difficulties involved in the situation with which the City is confronted, we are nevertheless duty bound to judge the ordinance of August 1, 1940, by its legal effect and not by statements as to what is proposed to be done therein or otherwise. So doing, it is manifest that the charge here in question can not be sustained on the theory by which sewer and water rentals have heretofore been upheld by this Court and the Superior Court in cases already referred to; the burden of this charge being imposed *in invitum,* no implied assent to its payment can possibly be deduced. Nor, can the charge be sustained on any theory of supposed special benefits arising from the mere presence or availability for use of the facility. As is pointed out in *Southern Ry. Co. v. City of Richmond,* 175 Va. 308 (1940), 8 S. E. (2d) 271, 274, "The right to use, 'the privilege of using,' a sewer may enhance the value of an abutting lot. [But,] this enhanced value accrues, if at all, immediately upon construction of the sewer. The municipality may levy [a] special assessment to the full amount of the enhanced value. If, in lieu of this method . . ., the city elects to levy a special assessment 'for use of sewer,' the amount of assessment must be in proportion to the value of the use. In the one case, the value of the peculiar benefits must be measured by the difference between the value of the lot with and without available sewers. In the other case, the limit of the special assessment is the value of the peculiar benefits accruing to the abutting landowner from actual use of the sewer, as distinguished from the

privilege of using." Cf. *City of Pittsburgh v. Phelan*, 85 Pa. Superior Ct. 548, 550-551; *Provident Trust Co. v. Judicial B. & L. Assn.*, 112 Pa. Superior Ct. 352, 359. It is noteworthy in this connection that, as stated in *Williams v. Samuel*, supra, at 268, a large part of the cost of the sewer system of the City of Philadelphia was raised by assessments against abutting property owners. Being imposed without any regard whatever to the extent or value of the use made of the sewer facilities, or whether any use is made, the charge provided for by the ordinance is, in legal effect, undoubtedly a tax, and the obligation to pay it could be created only by the City's exercise of its general taxing power. See *New York University v. American Book Co.*, 197 N. Y. 294 (1910), 90 N. E. 819; *In Re Union College*, 129 N. Y. 308 (1891), 29 N. E. 460; *Remsen v. Wheeler*, 105 N. Y. 573 (1887), 12 N. E. 564; *Village of Lemont v. Jenks*, 197 Ill. 363 (1902), 64 N. E. 362; *Culver v. Mayor and Aldermen of Jersey City*, 45 N. J. L. 256 (1883) ; 3 Dillon Municipal Corporation (5th ed.), Sec. 1323, page 2223. Cf. *Sanitary Sewer Dist. v. Smith*, 342 Mo. 365 (1938), 115 S. W. (2d) 816; *Grim v. Lewisville*, 54 Ohio App. 270 (1935), 6 N. E. (2d) 998. As a tax it is palpably violative of our constitutional provision requiring uniformity of taxation.

Since the charge sought to be imposed can be legally justified, if at all, only as a resort to the taxing power, it is clear that, irrespective of any question as to its validity as a tax, the revenue derived thereby is not such income as will support a debt exclusion under Article IX, section 8. While that constitutional provision, according to its terms, provides merely a limit upon the power to contract indebtedness and not upon the power of taxation, that its underlying purpose is to serve as a limit to taxation, as a protection to the taxpayers, is well settled. This Court said, in *Appeal of City of Erie*, 91 Pa. 398, 402: "Here is an agreement to pay, and that agreement to pay must be provided

for by a taxation over and above what is now necessary for the current expenses of the municipality. But this is just what the Constitution was intended to prevent; to prevent the *citizen* from being overburdened with municipal taxation." Again, in *Keller v. Scranton*, 200 Pa. 130, 135, the purpose of the provision was expressed thus: "The Constitutional provision is intended . . . to prevent municipalities from loading the future with obligations to pay for things the present desires but can not justly afford, and in short to establish the principle that beyond the defined limits they must pay as they go. No limit is fixed to expenditure for which present means of payment are provided . . . but a peremptory prohibition is put on expenditure on credit beyond the prescribed bounds." And, as was said in *Lesser v. Warren Borough*, 237 Pa. 501, 513, "In determining whether any legislative or municipal act conflicts with [this provision of] the Constitution, its substance, and not its form, must always be the test."

The fact that a special fund will be created is of no importance. As stated in 1 Dillon, Municipal Corporations, (5th ed.), Sec. 198, page 370, "If the fund from which the obligations are to be paid is to be created by the levy of a tax under the general power of taxation vested in the municipality, although the contract stipulates that no general indebtedness for the stipulated amount shall be created against the city, and that the only obligation undertaken by the city is to levy, anticipate, and pledge the tax agreed to be imposed, indebtedness is created, and the contract is void if the existing indebtedness of the municipality has reached the constitutional limit." See also *Boswell v. State*, 181 Okla. 435 (1937), 74 Pac. (2d) 940; *City of Ottumwa v. City Water Supply Co.*, 119 Fed. 315. Any speculation as to our law on this point is foreclosed, by plain implication, in the recent decision in *Graham v. Philadelphia*, 334 Pa. 513. We there sustained an undertaking by the City to levy a special tax to be appropriated to the

payment of a possible future liability on the part of the City, to arise by reason of legislation that might be enacted, in the event that it should arise, *only because* such a liability is so remote and contingent that it does not effect an increase of municipal indebtedness beyond the constitutional limitation, as a careful reading of the opinion in that case will demonstrate.

The City's contention boils down to this: that notwithstanding that it is already indebted beyond the constitutional limit and is without power, even with legislative sanction, to incur any new indebtedness, to the amount of a single dollar, it may, nevertheless, borrow money in the amount of $42,000,000, issuing its bonds therefor, and immunize such debt from attack as violating the constitutional limitation by simply providing for the levy of taxes to be collected annually from the taxable property of the City over a long term of years, or indefinitely, until the sum borrowed has been paid therefrom, and by providing further that such indebtedness shall only be paid from the taxes so specially levied. If the City may do this to build sewers, it may likewise borrow and issue its bonds for similar or greater amounts to finance municipal enterprises almost without limit. Simply to state the proposition is, we think, to refute it. The mischief which it is the purpose of the constitutional limitation to prevent, i. e., unduly burdensome, if not ruinous, taxation, would clearly be present in the same degree were a number of special levies for various municipal enterprises thus permitted to be imposed, the sum total of which when added to the necessary tax for current expenses would exceed what the taxable property of the municipality can support, as where the whole amount is collected under one assessment. As appellant states: "If a public utility should be held to be self-sustaining, within the meaning of the constitutional 'exclusion' clause where it is supported by revenue from an exercise of the taxing power,

then the constitutional exception has become the constitutional rule."

For the reasons above stated, the order entered October 7, 1940, reversing the decree appealed from, is confirmed. Costs to be paid by the City of Philadelphia.