Reserve at Paxton Creek, LP        :
                                         :
                v.                       :
                                         :
Susquehanna Township Authority,     :    No. 55 C.D. 2025
                Appellant            :    Argued: April 13, 2026


BEFORE:    HONORABLE ANNE E. COVEY, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE STELLA M. TSAI, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                      FILED: May 15, 2026


        The Susquehanna Township (Township) Authority (Authority) appeals from the Dauphin County Common Pleas Court's (trial court) September 3, 2024 order (docketed September 4, 2024) granting the Reserve at Paxton Creek, LP's (Reserve LP) request for mandamus and declaratory relief. The Authority presents three issues for this Court's review: whether the trial court erred by: (1) both failing to find that the Authority uses a flat-rate billing system for residential customers, and by concluding that 180 gallons per day (gpd) was the amount the Authority billed under Act 43 of 2021 (Act 43);[1] (2) failing to defer to the Authority in

---

[1] Act 43 added the following language to Section 5607(d)(9) of the Municipality Authorities Act (MAA):

> The owner of multiple residential units that are served by a single water meter may periodically request the authority to adjust the amount billed by showing a minimum of [5] consecutive years of actual usage data to determine if the amount billed exceeds the actual usage by 30% or more. If the usage data shows that an adjustment is needed, the authority shall appropriately adjust the billing and use the adjusted amount going forward. When calculating the new amount, the authority may include up to 10%

determining the sewer rates and actual water usage by the Township's residential users; and (3) finding that the Authority did not follow a reasonable and informed approach to effectuate Act 43. After review, this Court reverses.

Reserve LP owns a multi-family apartment complex in the Township known as Reserve at Paxton (Paxton). Paxton currently has 160 apartment units and one clubhouse that are connected to the sanitary sewer system run by the Authority. Paxton also has a single water meter for use in water billing. On January 9, 2023, Reserve LP filed an application (Application) seeking a sewer rate reduction under Act 43, which provides, in relevant part:

> The owner of multiple residential units that are served by a single water meter may periodically request the authority to adjust the amount billed by showing a minimum of [5] consecutive years of actual usage data to determine if the **amount billed** exceeds the **actual usage** by 30% or more.

53 Pa.C.S. § 5607(d)(9) (emphasis added).

On May 8, 2023, the Authority denied the Application, explaining:

> A thorough review and analysis of the water usage data and billing invoices submitted on behalf of [Paxton], which consists of 160 apartment units[] was . . . undertaken. The [Authority's] Board finds that such data establishes an average of 82.6 [gpd] with respect to each residence.

> A review was then also made of Capital Region Water and Suez Water Pennsylvania, now known as Veolia, water usage for all residential customers in [the] Township service area for the [5]-year period in question. The Authority has determined that on average each domestic residence (i.e. [Equivalent Dwelling Unit] (EDU) in [the] Township uses 89 [gpd].

---

over the amount used. After an initial adjustment, the owner may not request another adjustment for five years after the adjustment is completed.

53 Pa.C.S. § 5607(d)(9).

Based upon Act 43, owners of multiple residential units served by a single water meter must show that, "[t]he amount billed exceeds actual usage by 30% or more." As you know, sewer rates in [the] Township are established and charged by the Authority at a flat rate per residential user by the number of users divided by the annual cost of all operations necessary to provide and maintain an operating conveyance system in good condition. Users under such flat[-]rate billing system include [Paxton].

Furthermore, [the] Authority sewer rates are neither charged based upon the number of gallons of actual water usage by a residential customer nor upon the volume of sewer wastewater generated by each residential customer as proposed in the Act 43 submission report for [Paxton]. The volume of wastewater identified in the January 9, 2023[] submission for [Paxton], is applicable only for purposes of planning such as with respect to the continued construction, maintenance, and development of the sewage conveyance system.

Reproduced Record (R.R.) at 33-34.[2]

On June 6, 2023, Reserve LP filed a Complaint in the trial court alleging that it is entitled to mandamus relief and/or a declaration that Reserve LP is entitled to relief pursuant to Act 43. On April 29, 2024, the trial court held a hearing during which the parties presented witness testimony. On September 4, 2024, the trial court granted Reserve LP's request for mandamus and declaratory relief. In its opinion, the trial court explained the relevant facts and the parties' positions as follows:

[T]he parties agree that the flow from the Paxton apartment complex on a per unit basis is 82.6 [gpd]. There is no dispute that the water bills are authentic or accurate as to Paxton's water usage and, concurrently, its sewer usage. There is also no dispute that Paxton has been

---

[2] The Authority's Reproduced Record fails to comply with the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."). However, for consistency, the citations herein are as reflected in the Reproduced Record.

getting sewer and water service for a [5]-year[] period. As such, the parties agree that Paxton is entitled to Act 43 relief if the amount that they are billed exceeds the 82.6 [gpd] that they actually used by 30% or more. However, the parties disagree as to how to determine the amount that Paxton has been billed.

[Reserve LP] argues that residential rates are $130.00 per quarter for each [EDU]. Each of the one hundred sixty (160) apartments in Paxton constitute [1] EDU. The [Authority's Rules, Rates[,] and Regulations (Rules and Regulations)] specifically define [1] EDU as an average daily water consumption of one hundred eighty (180) [gpd]. Based on this argument, [Reserve LP] concludes that [its] actual use of 82.6 [gpd] is more than 30% less than the "amount billed" of 180 [gpd].

In contrast, [the Authority] argues that each of the residential customers of [Reserve LP] are billed a flat uniform rate. This sewer rate is based upon the cost of operation of the sewer system and not based on the number of gallons of water used or sewer waste generated by a residential user. [The Authority] asserts that the "amount billed" should be the average rate of water use by all residential users within [the] Township, which [the Authority] calculated as 88.65 [gpd]. If the [trial c]ourt uses this number as the amount billed, [Reserve LP's] actual use is only 7% less than the average rate of water use for all residential units within [] [the] Township.

Reserve LP's Br., App'x A (Trial Ct. Op.) at 2-3 (citation omitted).

In granting Reserve LP relief, the trial court reasoned:

Act 43 does not define the term "amount billed." However, there is no indication in the language of the statute itself that the "amount billed" should involve a comparison between an apartment complex's water usage and the average use of all residential customers in the Township. Rather, the implication is that the comparison should be between the amount of water/sewer usage that the apartment complex uses ([]actual usage[]) versus the amount of water/sewer usage for which they are billed ([]amount billed[]). The [Authority] specifically states

4

that each apartment unit constitutes one EDU. The [Authority] also specifically defines an EDU as 180 [gpd].

[Reserve LP] provided expert testimony from Fred Ebert [(Ebert)], who is a professional engineer and provides services for fourteen (14) municipal sewer/water authorities. [] Ebert provided an analysis based on historic meter readings at Paxton[,] as well as a review of the [R]ules and [R]egulations. He opined that the published fees for the [Authority] indicate that an EDU is charged to residential users in the amount of 180 [gpd]. This is confirmed by the Rules and Regulations . . . . The Rules and Regulations also confirm that the measurement of an EDU is 180 [gpd] for non-residential customers. [The trial court] found [] Ebert's testimony and his approach to his opinion to be credible.

Therefore, after reviewing Act 43, the arguments of the parties, and the testimony that was provided at the [h]earing, [the trial court] find[s] that the "amount billed" in this matter is defined as 180 [gpd] per unit. The parties agree that the flow from Paxton on a per unit basis is 82.6 [gpd]. As such, [Reserve LP] is entitled to both declaratory judgment and/or mandamus [relief] in its favor as to [its] request for Act 43 relief because [its] actual use is more than 30% less than the amount that [it was] billed.

Trial Ct. Op. at 3-4. The Authority appealed to this Court.[3]

Initially, this Court has explained:

The common law writ of mandamus lies to compel the performance of a ministerial act or mandatory duty, and the burden of proof falls upon the party seeking this extraordinary remedy to establish his legal right thereto. *Baron v.* [] *Dep't of Hum*[.] *Servs.*, 169 A.3d 1268, 1273 (Pa. Cmwlth. 2017) (*en banc*). To establish a claim for mandamus, a petitioner must demonstrate: "(1) a clear legal right to relief in the petitioner; (2) a corresponding

---

[3] This Court's "review in a mandamus action is limited to determining whether the trial court abused its discretion or committed an error of law and whether sufficient evidence exists to support the trial court's findings." *Bethke v. City of Phila.*, 343 A.3d 370, 375, n.8 (Pa. Cmwlth. 2025).

5

duty in the respondent; and[] (3) the lack of any other adequate and appropriate remedy." *Id*.

*PC Land LLC v. Bd. of Comm'rs of Bethlehem Twp.*, 320 A.3d 804, 813 (Pa. Cmwlth. 2024).

The Authority first contends that the trial court erred by failing to find that the Authority uses a flat-rate billing system for residential customers, and by concluding that 180 gpd was the *amount billed* under Act 43. The Rules and Regulations define *EDU* as

> the base unit of measure for **estimating** the quantity of [s]anitary [s]ewage and/or [i]ndustrial [w]astes from an [i]mproved [p]roperty. Each [r]esidential [e]stablishment is synonymous with an [EDU], in which average daily water consumption is **assumed to be** 180 [gpd]. The flow from [n]on-[r]esidential [e]stablishments is converted to EDU's by dividing the estimated daily water consumption by 180 gpd . . . .

R.R. at 53 (emphasis added). Township Manager David Pribulka testified that residential customers, including Paxton, are not billed based on usage, but at a flat rate. *See* R.R. at 87-88.

This Court has previously acknowledged that sewer charges need not be directly proportional to a customer's use.

> [T]here is value in simply being connected to a sewer system. In *Scott Township Sewer & Water Authority v. Ease Simulation, Inc.*, 2 A.3d 1288 (Pa. Cmwlth. 2010), th[is] Court held that the fact that the user paid more for service than a neighbor did not make the rate *per se* unreasonable. [*Id*.] at 1291. In *Ack v. Carroll Township Authority*, 661 A.2d 514 (Pa. Cmwlth. 1995) . . . , [this Court] commented that "**rates need not be proportioned with exactness to [the] use made or the cost to the individual customer**, **so long as it is reasonably related to the cost of maintaining the service for all customers**, **and the customers challenging the rates receive 'some' benefit from the system**." [*Id*.] at 518. The charge should be reasonably proportional to the value of the service,

6

rather than to the use made of the system. *In re Petition of City of Phila*[.], . . . 16 A.2d 32, 35 ([Pa.] 1940).

*GSP Mgmt. Co. v. Duncansville Mun. Auth.*, 126 A.3d 369, 373-74 (Pa. Cmwlth. 2015) (citation omitted; emphasis added). Moreover, in *Water Polo III, LP v. Susquehanna Township Authority* (Pa. Cmwlth. No. 1116 C.D. 2021, filed Dec. 1, 2022),[4] a case challenging the Authority's rates as applied to Paxton,[5] this Court affirmed a trial court's finding that the Authority's uniform residential sewer rate charges were permissible.[6] Accordingly, this Court must determine the proper

---

[4] This Court's unreported memorandum opinions filed after January 15, 2008, may be cited "for [their] persuasive value, but not as binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Water Polo III* is cited for its persuasive value.

[5] In *Water Polo III*, Water Polo III, LP was identified as Paxton's owner. In the current litigation, Reserve LP is identified as the owner. It appears that at some point since *Water Polo III* was decided, Paxton's ownership changed to Reserve LP.

[6] Therein, this Court stated:

> [Section 5607(d)(9) of t]he MAA authorizes municipal authorities:
>
> > To fix, alter, charge and collect rates and other charges in the area served by its facilities **at reasonable and uniform rates** to be determined exclusively by it for the purpose of providing for the payment of the expenses of the authority, the construction, improvement, repair, maintenance and operation of its facilities and properties . . . .
>
> 53 Pa.C.S. § 5607(d)(9) (emphasis added). "The MAA provides municipal authorities with significant discretion to impose fees and charges." *J. Buchanan Assocs., LLC v. Univ. Area Joint Auth.*, 231 A.3d 1089, 1104 (Pa. Cmwlth. 2020) (citation omitted). A municipal authority's rates must, however, be "reasonably proportional to the value of the service rendered." *W. Clinton Cnty. Mun. Auth. v. Rosamilia*, 826 A.2d 52, 57 (Pa. Cmwlth. 2003).

*Water Polo III*, slip op. at 8.

Concluding that the Authority's rate structure did not violate the MAA, the *Water Polo III* Court observed:

> The trial court's finding that Water Polo obtains a benefit from [the] Authority's sewage system was supported by competent evidence in

7

manner of interpreting Act 43 to reflect the General Assembly's intent in the context of the Authority's flat-rate billing system to discern whether the trial court correctly concluded that Reserve LP satisfied its burden for mandamus relief.

"The object of statutory construction is to ascertain and to effectuate legislative intent." *Zelno v. Lyons*, 245 A.3d 1185, 1187 n.7 (Pa. Cmwlth. 2021). "Generally, the plain language of the statute 'provides the best indication of legislative intent.'" *McLaughlin v. Nahata*, 298 A.3d 384, 393 n.17 (Pa. 2023) (quoting *Miller v. Cnty. of Ctr.*, 173 A.3d 1162, 1168 (Pa. 2017)). Importantly, Act 43 permits a billing reduction where the *amount billed* exceeds *actual use* by 30%, but Act 43 does not define the term *amount billed*. More challenging under the instant scenario is that there does not appear to be an actual *amount* billed, since the Authority's billing is not usage-based. All residents are billed the same regardless of their usage.

Act 43's plain language reflects a legislative intent to address inequity between customer residents of individual homes, and customer owners of multiple residential units served by a single meter (in which residents traditionally use less services). Here, the Authority divided the "cost of maintaining the service for all customers" equally amongst all residential customers by the imposition of a flat fee. *GSP Mgmt. Co.*, 126 A.3d at 374 (quoting *Ack*, 661 A.2d at 518). Hence, the flat rate the Authority charges does not reflect the amount of services used by those

---

this matter. The trial court's finding that [the] Authority's rates are tied to the annual expenses of maintaining the sewage system was also supported by competent evidence. Thus . . . [the] Authority's rate structure is "not arbitrary or unreasonably related to the value of services rendered either as actually consumed, or readily available for use." []*Chicora* [*Commons, Ltd. P'ship, LLP v. Chicora Borough Sewer Auth.*], 922 A.2d [986,] 995 [(Pa. Cmwlth 2007)].

*Water Polo III*, slip op. at 10.

customers, and, thus, cannot be interpreted as the *amount billed*. The Authority's decision to spread the operational cost equally amongst all residential customers necessitates use averaging of those same customers to associate a specific gpd with the fixed amount paid to determine the *amount billed*. Thus, the Authority calculated the average actual use of all residential customers and then compared Paxton's use to determine whether their actual use was 30% lower than the average gpd, i.e., *amount billed*.

Although the Rules and Regulations describe each "[r]esidential [e]stablishment [a]s synonymous with an [EDU], in which average daily water consumption is **assumed to be** 180 gallons per day" for planning purposes, the Authority provided specific analysis of actual customer usage, thus, evidencing the actual usage. R.R. at 53 (emphasis added). This Court discerns no error in the Authority's analysis. Accordingly, the trial court erred by failing to find that the Authority uses a flat-rate billing system for residential customers and concluding that 180 gpd was the amount the Authority billed for Act 43 purposes. Because Reserve LP has no clear right to relief, declaratory and mandamus relief are not warranted.

For all of the above reasons, the trial court's order is reversed.[7]

_____
ANNE E. COVEY, Judge

---

[7] Given this Court's resolution of the Authority's first issue, it need not reach the remaining issues.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Reserve at Paxton Creek, LP      :
                                      :
           v.                       :
                                      :
Susquehanna Township Authority,      :      No. 55 C.D. 2025
                Appellant        :

## O R D E R

AND NOW, this 15th day of May, 2026, the Dauphin County Common Pleas Court's September 3, 2024 order (docketed September 4, 2024) is reversed.

_____
ANNE E. COVEY, Judge